802 F.2d 207
 231 U.S.P.Q. 301, 2 UCC Rep.Serv.2d 269
 In the Matter of ROMAN CLEANSER COMPANY, Debtor.
PATTERSON LABORATORIES, INC., Plaintiff,
National Acceptance Company of America, Intervening Plaintiff-Appellee,
v.
ROMAN CLEANSER COMPANY, and G.E. Grogan, Trustee,
Defendants-Appellants.
 No. 85-1379.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 22, 1986.
Decided Sept. 30, 1986.
 
 Thomas B. Radom (argued), Carole M. Crosby, Birmingham, Mich., for intervening plaintiff-appellee.
 Before MERRITT and JONES, Circuit Judges, and THOMAS, Senior District Judge.*
 MERRITT, Circuit Judge.
 
 
 1
 The Lanham Act, 15 U.S.C. Sec. 1060, limits the assignment of registered trademarks so that marks are assignable only "with the good will of the business in which the mark is used, or with that part of good will ... connected with the use of ... the mark." The issue here is whether a security interest in a trademark constitutes an impermissible "assignment in gross" under the Act if the security interest fails to cover machinery and equipment needed to produce the trademarked goods. We hold that it does not and affirm the decisions of the District Court and Bankruptcy Court, 43 B.R. 940.
 
 
 2
 The facts are not disputed. A lender, National Acceptance Company of America, the appellee, made a loan to Roman Cleanser Company in 1978 and obtained a security interest "in and to all of Roman Cleanser's then owned and thereafter acquired goods, equipment, and general intangibles and the proceeds thereof as collateral for the payment of all indebtedness and liabilities then existing or thereafter arising of Roman Cleanser to NAC." NAC correctly filed a financing statement with the Michigan Secretary of State. Roman Cleanser Company was a Michigan corporation engaged in the business of manufacturing and selling household cleaning products, including "Roman Cleaner" scouring powder. On February 9, 1984, Roman Cleanser filed for protection under Chapter 11, 11 U.S.C. Sec. 301. In August of that year, the proceeding was converted to one under Chapter 7, 11 U.S.C. Sec. 1112. Subject to the Bankruptcy Court's determination of the respective interests of claimants in the trademarks, the federally registered trademarks (along with Roman Cleanser's formulas and customer lists) were sold to the Michlin Chemical Corporation for $180,000. Sometime prior to the filing of the bankruptcy petition, NAC released its security interest in the vehicles, machinery, and equipment. The sole issue in this case is the validity of NAC's security interest in the Roman Cleanser trademark.
 
 
 3
 The Trustee in bankruptcy as appellant argues that a security interest in a trademark is improper unless it is held by a "qualified taker," by which he means an entity that either holds a security interest in the equipment necessary to produce the product to which the trademark relates or that already possesses such equipment itself.[1] This construction of the term "goodwill of the business" is necessary, he argues, in order to ensure that consumers will not be misled by a transferee who applies the trademark to products having different characteristics than were associated with the trademark prior to the transfer. Under this definition, the lender, National, is not a "qualified taker" since it retains a security interest in only the trademarks, formulas and customer lists associated with Roman Cleanser.
 
 
 4
 It is certainly true that Congress did not intend to establish an open market in trademarks that are not associated with any particular goods, such as exists in some other countries, and enacted the goodwill requirement to prevent such a situation. It does not follow, however, that Congress intended to make the transfer of trademarks contingent on the transfer or possession of machinery.
 
 
 5
 The construction of the term "goodwill" to mean "goodwill, including machinery necessary to manufacture the product in question" does not serve a useful purpose. Such a requirement would not confer any real protection on consumers. There could be only two ways in which a "qualified taker" requirement might protect consumers from deception, neither of which applies here: the requirement that the assignee possess the tangible assets needed to produce the product might protect consumers (1) from trademarked goods that are different from the original because the assignee is ignorant of the methods used to produce the original product, or (2) from an unscrupulous assignee who deliberately changes the quality of the goods for the worse.
 
 
 6
 In this case, the formulas and customer lists of Roman Cleanser passed with the trademarks, so that there can be no question of the assignee's knowledge about how to produce the goods at quality levels identical to those enjoyed by Roman Cleanser's customers before the assignment. As for protecting consumers from unscrupulous practices, it is hard to see how a requirement that equipment be transferred along with the trademark would provide any protection at all, since the assignee would still remain free to adulterate or otherwise debase the products produced by the equipment after it was transferred. Consumers are protected against such practices by the mechanisms of the market (witness the "new Coke" phenomenon) and by anti-fraud laws, with trademark law playing a distinctly subordinate role.[2]
 
 
 7
 Grafting a "machinery and equipment" rule onto the "goodwill" rule of the Lanham Act comes within neither the language nor the purpose of the assignment clause. Many firms marketing consumer products have no equipment of their own, but rely exclusively on outside producers under contract. The application of the Trustee's "qualified taker" theory to such firms would produce needless confusion, and to no purpose.
 
 
 8
 We are of the opinion that the "goodwill" spoken of in the statute does not mean machinery, and that the transfer of formulas and customer lists, both classic elements of goodwill, along with the trademarks satisfies the statutory requirement. Accordingly, the judgment of the District Court is affirmed.[3]
 
 
 9
 WILLIAM K. THOMAS, Senior District Judge, concurring.
 
 
 10
 I concur in the majority decision, affirming the decisions of the District Court and Bankruptcy Court. However, in joining the majority's decision I analyze the case differently.
 
 I.
 
 11
 In the first part of his opinion, the Bankruptcy Judge concluded that by its Article 9 filing of its financing statement with the Michigan Secretary of State,[1] National Acceptance Company of America (NAC) perfected its security interest "in and to all of Roman Cleanser's then owned and thereafter acquired goods, equipment and general intangibles and the proceeds thereof as collateral for the payment of all indebtedness and liabilities then existing or thereafter arising of Roman Cleanser to NAC." In reaching this conclusion the Bankruptcy Judge determined that contrary to the Trustee's contention, NAC was not required, in order to perfect its interest, to file a conditional assignment of its security interest (in the federally registered trademarks) with the United States Patent and Trademark Office.
 
 
 12
 The Lanham Act, 15 U.S.C. Sec. 1060, provides that a "registered mark [trademark] ... shall be assignable with the goodwill of the business in which the mark is used." It is further provided that assignment shall be by an instrument in writing (duly executed) and that the assignment "shall be void as against any subsequent purchaser for a valuable consideration without notice, unless it is recorded in the Patent and Trademark Office...."
 
 
 13
 In holding that NAC need not file with the Patent and Trademark Office in order to perfect its interest, the Bankruptcy Court in this case observed that "[t]rademark cases distinguish between security interests and assignments." 43 B.R. at 944. Upon an extensive review of the authorities which have addressed the subject the Bankruptcy Court further observed:
 
 
 14
 An "assignment" of a trademark is an absolute transfer of the entire right, title and interest of the trademark.... The grant of a security interest is not such a transfer. It is merely what the term suggests--a device to secure an indebtedness. It is a mere agreement to assign in the event of a default by the debtor. "[T]he rule is well established that a mere agreement for the future assignment of a trademark is not an assignment of either the mark itself or the goodwill attached to it." Li'l' Red Barn at 107.[2]
 
 
 15
 The Trustee does not appeal the Bankruptcy Court's conclusion that "the Article 9 filing perfected NAC's security interest." However, the Trustee does appeal these ultimate conclusions of the Bankruptcy Court:
 
 
 16
 1) "Because NAC had a valid and perfected security interest in the formulas and customer lists" NAC, therefore, had a perfected security interest in the assets sold to Michlin.
 
 
 17
 2) NAC's security interest is not subject to attack by the Trustee as an assignment in gross.
 
 II.
 
 18
 The Trustee first argues that "creditor had no security interest in Debtor's Trademarks after December 21, 1983." On that date, in exchange for a partial repayment of NAC's loan, creditor NAC released its security interest in debtor Roman Cleanser's vehicles, machinery, equipment and fixtures. Nevertheless, NAC retained its security interest in Roman Cleanser's trademarks, formulas and customer lists.
 
 
 19
 Although NAC released its interest in Roman Cleanser's vehicles, machinery, equipment and fixtures, the debtor still controlled and used the trademarks, the formulas and the customer lists. The conditional or inchoate nature of NAC's security interest therefore could not have affected the identity or the quality of the products that Roman Cleanser continued to manufacture under its marks. Thus, there could be no violation of the Lanham Act's policy of protecting the public from the possible manufacture and sale of goods that might copy Roman Cleanser's products but were not associated with the marks' goodwill. Hence, on December 21, after NAC's release of its security interest in the tangible assets of Roman Cleanser, NAC's conditional assignment in the trademarks had not become an "assignment" under the Lanham Act. See Adams Apple Distributing Co. v. Papeleras Reuindas, S.A., 773 F.2d 925, 931 (7th Cir.1985).
 
 
 20
 The Trustee further argues that under bankruptcy law "the validity of a creditor's claimed security interest is determined at the latest as of the date bankruptcy proceedings are initiated." Trustee argues that on the date bankruptcy proceedings were commenced, February 9, 1984, "creditor did not have the ability to manufacture or market the trademark products." While default under the NAC-Roman Cleanser "Loan and Security Agreement" had now occurred (bankruptcy proceedings was an event that produced default under the agreement), the occurrence of default did not automatically cause the trademarked products to be assigned to the creditor. Thus, there was still no "assignment" to NAC as of February 9, 1984.
 
 
 21
 It is essential, therefore, to examine pertinent events after February 9, 1984. On June 12, 1984 the Bankruptcy Court entered an order which "authorized" the sale of "trademarks, formulas and customer lists [to Michlin] for the sum of $180,000." On the next day, June 13, the Bankruptcy Court entered an order transferring the "claims of National Acceptance Corporation against any assets of this estate ... to the proceeds of sale of the assets of the Debtor, with the validity, priority and amount of said claims to be determined by the court at a later date." By stipulation of the parties, NAC intervened in Patterson Laboratories' adversary proceeding against Roman Cleaner and therein NAC claimed that it had "a first and prior security interest in the trademarks and trade names of Roman Cleanser Company which are the subject of this Adversary Proceeding."
 
 
 22
 It is recognized in trademark law that when the creditor, upon a debtor's default, enforces its conditional assignment in a trademark, the conditional assignment "becomes an operative assignment and goodwill must pass with the mark to the creditor-assignee." 1 J. McCarthy, Trademarks and Unfair Competition, Sec. 18:1 p. 796 (2d ed. 1984). Under this general rule it must be decided whether NAC's conditional right to an assignment under its security interest was transformed into an assignment by virtue of NAC's intervention in the adversary proceedings or any succeeding event.[3]
 
 
 23
 NAC's motion to enforce a "first and prior security interest in Roman Cleanser's trademarks and trade names" was made within the legal framework of section 363[4] of the Bankruptcy Code, 11 U.S.C. Sec. 363. The Trustee is authorized by section 363(b) to sell estate property outside "the ordinary course of business." Under certain conditions, section 363(f) permits such a sale to be made "free and clear of any interest in such property of an entity other than the estate." The fourth condition of section 363(f) is that such interest is in "bona fide dispute." Pursuant to these provisions the Bankruptcy Court approved the Trustee's sale to Michlin of Roman Cleanser's trademarks, formulas and customer lists for $180,000 cash. Concurrently, the Bankruptcy Court transferred NAC's lien to the proceeds of sale. Since NAC sought only enforcement of its lien and accepted transfer of that lien to the money proceeds of the sale to Michlin it is evident that no title or ownership rights in the trademarks at any time were transferred to NAC. Hence, I conclude that neither NAC's motion to intervene nor the resulting transfer of its lien to the proceeds of the sale became "an operative assignment." J. McCarthy, supra p. 211, at 796.
 
 
 24
 Such conclusion is supported by the fact that NAC did not receive and never had the use of the Roman Cleanser trademarks, trade names, formulas or customer lists. Thus, NAC at no time could have thwarted the policy behind the requirement of 15 U.S.C. Sec. 1060 that the registered mark must be assigned with the goodwill of the business in which the mark is used. This policy is to protect the quality of products processed and sold under registered trademarks.[5]
 
 
 25
 For these various reasons it is determined that neither NAC's security interest, nor its motion to intervene to claim a first and prior security interest in the trademarks and trade names of Roman Cleanser, created an assignment under section 1060 of the Lanham Act. Because there was no assignment of the Roman Cleanser trademarks to NAC, the Lanham Act's goodwill requirement is inapplicable. Therefore, I conclude that the Bankruptcy Court properly held that NAC's security interest in the debtor's collateral, which included the debtor's trademarks, formulas and customer lists, perfected under the Article 9 filing, did not violate federal trademark law and was valid and enforceable.[6]
 
 
 26
 In summary, I have concluded that NAC's security interest in the Roman Cleanser trademarks, customer lists and formulas was not an "assignment," and never became an "assignment," under the Lanham Act.[7] Thus, the goodwill requirement of section 1060 is inapplicable. For this reason, I join the majority's decision affirming the judgment of the District Court.
 
 
 
 *
 The Honorable William K. Thomas, Senior District Judge of the United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The Trustee admits that the "qualified taker" requirement is of his own invention, and that no court has adopted it. His arguments are thus necessarily based on the policies underlying the Lanham Act, as is our disposition of them
 
 
 [2]
 Trademark law does provide some protection against subsequent fraud by an assignee, since such fraud can lead to a loss of trademark rights. See 1 J. Gilson, Trademark Protection and Practice Sec. 3.07 at 3-105 (1985). This fact further vitiates any justification for a "qualified taker" requirement
 
 
 [3]
 The concurring opinion may or may not be correct in arguing that technically there has been no assignment of the Roman Cleanser trademark to NAC and that the issue is premature. The problem with that position in this case is that we cannot find that the assignment issue discussed in the concurring opinion has been raised, presented for review or briefed by the parties. The parties have joined issue on the assignment 'in gross' issue discussed above, not the issue discussed in the concurring opinion. In the statement of issues portion of his brief, the Trustee presents one issue for review as follows:
 "STATEMENT OF ISSUE "
 "Did the lower courts err as a matter of law in holding that creditor had a valid and enforceable security interest in debtor's trademarks, when creditor had no equipment or facilities capable of producing or marketing the trademark products and no security interest in such equipment or facilities, so that it could not have acquired or sold the trademarks without violating the Lanham Trademark Act's ban on 'in gross' interests?"
 This is the only issue that appellee, NAC, attempts to rebut.
 The briefs of both parties assume an assignment and discuss only the issue stated above. We hesitate to decide the technical 'assignment' issue without further briefing and a more complete treatment of the issue.
 
 
 [1]
 Pursuant to the Michigan Uniform Commercial Code, Mich.Comp.Laws Sec. 440.9401 (1979)
 
 
 [2]
 Li'l' Red Barn, Inc. v. Red Barn System, Inc., 322 F.Supp. 98 (N.D.Ind.1970), aff'd per curiam, 174 U.S.P.Q. 193 (7th Cir.1972). See also Adams Apple Distributing Co. v. Papeleras Reuindas, S.A., 773 F.2d 925, 931 (7th Cir.1985) (holding that an equitable lien on a trademark is a remedy for a debt that "does not seek to give the lienholder an in gross property right to the trademark itself"); SMI Industries Canada Ltd. v. Caelter Industries, Inc., 586 F.Supp. 808, 822 (N.D.N.Y.1984) (holding that agreement whereby "trademarks were merely used ... to secure ... indebtedness" did not amount to in gross transfer); Marshak v. Green, 746 F.2d 927, 929 (2d Cir.1984) (defining an "assignment in gross" as "[a] sale of a trade name or mark divorced from its goodwill")
 
 
 [3]
 In footnote 3 of the majority opinion it is stated that "the assignment issue discussed in the concurring opinion has [not] been raised, presented for review or briefed by the parties." As I read the briefs, however, the question of whether NAC's security interest constituted an assignment is recognized as an issue by the parties. On page 10 of its brief, NAC contends:
 The terms "security interest" and "assignment" are terms of art with distinct and different meanings. A security interest is an interest in personal property or fixtures which secures its payment or performance of an obligation.... An "assignment" of a trademark is an absolute transfer of the entire right, title and interest to the trademark.... The grant of a security interest is not such a transfer. It is merely what the term suggests--a device to secure an indebtedness.
 In response, the Trustee asserts on page 6 of his reply brief:
 Creditor relies heavily on observations ... to the effect that the initial granting of a security interest in a trademark is different from an outright assignment of the trademark because in the former case the creditor had no present right to use the mark.... This distinction is irrelevant to the issue presented in the case at bar.
 The majority opinion states that "[i]n this case, the formulas and customer lists of Roman Cleanser passed with the trademark," presumably to NAC. It is not clear at what point of time or by what event the majority concludes the "pass[ing]" to NAC occurred. In any event, the question of whether NAC's security interest amounted to an "assignment" is subsumed within the assignment in gross question argued by the parties. If there was no assignment, then NAC's interest could not be treated as an assignment in gross.
 In addition, in the Bankruptcy Court the question identified in the above quoted portions of the appellate briefs was similarly raised in the briefs filed by the parties. Thus it was that the Bankruptcy Court devoted the major portion of its opinion to the question of whether NAC's security interest constituted an assignment under the Lanham Act. Since the Bankruptcy Court concluded that the security interest did not constitute an assignment, it ruled that the security interest (conditional assignment) need not be filed with the Patent and Trademark Office in order to be perfected.
 For these reasons, I believe that the question of whether NAC's security interest was an assignment in gross first requires a decision as to whether it ever became an "assignment," and that it is appropriate and essential for the court to make such a determination on this appeal.
 
 
 [4]
 In his principal brief the Trustee heads Section IV: "Because the question is whether creditor's claimed security interest would have been valid absent these bankruptcy proceedings, the lower courts erred ..." To the contrary, I believe that the validity of NAC's enforcement of its security interest must be decided within the legal framework of section 363(b) and (f) of the Bankruptcy Code
 
 
 [5]
 The present inapplicability of section 1060 is apparent in another respect. Assignments of registered marks should be recorded in the Patent and Trademark Office. However, NAC's stipulated intervention in the adversary proceeding, as analyzed above, could not have qualified and did not qualify as an assignment of registered marks that was eligible for recording
 
 
 [6]
 As seen, the Trustee transferred and assigned to Michlin title and ownership rights in the Roman Cleanser trademarks, formulas and customer lists. In reaching its conclusion that NAC's security interest "is not subject to attack ... as an assignment in gross," the Bankruptcy Court focused on this transfer to Michlin:
 The Trustee does not allege that the transfer to Michlin was invalid as an assignment in gross, conceding by implication the validity of the transfer. If the Trustee's assignment of the marks was valid, there is no basis for challenging NAC's security interest as an invalid assignment.
 
 
 [43]
 B.R. at 948
 I do not accept the Bankruptcy Court's reasoning. The validity of NAC's security interest and its enforcement thereof is separate from and is not affected by the validity of the Trustee's assignment of the trademarks, formulas and customer lists to Michlin.
 
 
 [7]
 If I had concluded that NAC's security interest was transformed into an assignment, then I would agree with Judge Merritt that a security interest in a trademark and goodwill consisting of formulas and customer lists is not an impermissible "assignment in gross" even though the security interest fails to cover machinery and equipment needed to produce the trademarked goods