MERRITT, Circuit Judge.
The Lanham Act, 15 U.S.C. § 1060, limits the assignment of registered trademarks so that marks are assignable only “with the good will of the business in which the mark is used, or with that part of good will ... connected with the use of ... the mark.” The issue here is whether a security interest in a trademark constitutes an impermissible “assignment in gross” under the Act if the security interest fails to cover machinery and equipment needed to produce the trademarked goods. We hold that it does not and affirm the decisions of the District Court and Bankruptcy Court, 43 B.R. 940.
The facts are not disputed. A lender, National Acceptance Company of America, the appellee, made a loan to Roman Cleanser Company in 1978 and obtained a security interest “in and to all of Roman Cleanser’s then owned and thereafter acquired goods, equipment, and general intangibles and the proceeds thereof as collateral for the payment of all indebtedness and liabilities then existing or thereafter arising of Roman Cleanser to NAC.” NAC correctly filed a financing statement with the Michigan Secretary of State. Roman Cleanser Company was a Michigan corporation engaged in the business of manufacturing and selling household cleaning products, including “Roman Cleaner” scouring powder. On February 9,1984, Roman Cleanser filed for protection under Chapter 11, 11 U.S.C. § 301. In August of that year, the proceeding was converted to one under Chapter 7, 11 U.S.C. § 1112. Subject to the Bankruptcy Court’s determination of the respective interests of claimants in the trademarks, the federally registered trademarks (along with Roman Cleanser’s formulas and customer lists) were sold to the Michlin Chemical Corporation for $180,000. Sometime prior to the filing of the bankruptcy petition, NAC released its security interest in the vehicles, machinery, and equipment. The sole issue in this case is the validity of NAC’s security interest in the Roman Cleanser trademark.
The Trustee in bankruptcy as appellant argues that a security interest in a trademark is improper unless it is held by a “qualified taker,” by which he means an entity that either holds a security interest in the equipment necessary to produce the product to which the trademark relates or that already possesses such equipment itself.[1] This construction of the term “goodwill of the business” is necessary, he argues, in order to ensure that consumers will not be misled by a transferee who applies the trademark to products having different characteristics than were associated with the trademark prior to the transfer. Under this definition, the lender, National, is not a “qualified taker” since it retains a security interest in only the trademarks, formulas and customer lists associated with Roman Cleanser.
It is certainly true that Congress did not intend to establish an open market in trademarks that are not associated with any particular goods, such as exists in some other countries, and enacted the goodwill requirement to prevent such a situation. It does not follow, however, that Congress intended to make the transfer of trademarks contingent on the transfer or possession of machinery.
The construction of the term “goodwill” to mean “goodwill, including machinery necessary to manufacture the product in question” does not serve a useful purpose. Such a requirement would not confer any real protection on consumers. There could be only two ways in which a “qualified taker” requirement might protect consum *209 ers from deception, neither of which applies here: the requirement that the assignee possess the tangible assets needed to produce the product might protect consumers (1) from trademarked goods that are different from the original because the assignee is ignorant of the methods used to produce the original product, or (2) from an unscrupulous assignee who deliberately changes the quality of the goods for the worse.
In this case, the formulas and customer lists of Roman Cleanser passed with the trademarks, so that there can be no question of the assignee’s knowledge about how to produce the goods at quality levels identical to those enjoyed by Roman Cleanser’s customers before the assignment. As for protecting consumers from unscrupulous practices, it is hard to see how a requirement that equipment be transferred along with the trademark would provide any protection at all, since the assignee would still remain free to adulterate or otherwise debase the products produced by the equipment after it was transferred. Consumers are protected against such practices by the mechanisms of the market (witness the “new Coke” phenomenon) and by anti-fraud laws, with trademark law playing a distinctly subordinate role.[2]
Grafting a “machinery and equipment” rule onto the “goodwill” rule of the Lanham Act comes within neither the language nor the purpose of the assignment clause. Many firms marketing consumer products have no equipment of their own, but rely exclusively on outside producers under contract. The application of the Trustee’s “qualified taker” theory to such firms would produce needless confusion, and to no purpose.
We are of the opinion that the “goodwill” spoken of in the statute does not mean machinery, and that the transfer of formulas and customer lists, both classic elements of goodwill, along with the trademarks satisfies the statutory requirement. Accordingly, the judgment of the District Court is affirmed.[3]

. The Trustee admits that the "qualified taker” requirement is of his own invention, and that no court has adopted it. His arguments are thus necessarily based on the policies underlying the Lanham Act, as is our disposition of them.

. Trademark law does provide some protection against subsequent fraud by an assignee, since such fraud can lead to a loss of trademark rights. See 1 J. Gilson, Trademark Protection and Practice § 3.07 at 3-105 (1985). This fact further vitiates any justification for a "qualified taker" requirement.

. The concurring opinion may or may not be correct in arguing that technically there has been no assignment of the Roman Cleanser trademark to NAC and that the issue is premature. The problem with that position in this case is that we cannot find that the assignment issue discussed in the concurring opinion has been raised, presented for review or briefed by the parties. The parties have joined issue on the assignment ‘in gross’ issue discussed above, not the issue discussed in the concurring opinion. In the statement of issues portion of his brief, the Trustee presents one issue for review as follows:

"STATEMENT OF ISSUE"

"Did the lower courts err as a matter of law in holding that creditor had a valid and enforceable security interest in debtor’s trademarks, when creditor had no equipment or facilities capable of producing or marketing the trademark products and no security interest in such equipment or facilities, so that it could not have acquired or sold the trademarks without violating the Lanham Trademark Act’s ban on ‘in gross’ interests?”
This is the only issue that appellee, NAC, attempts to rebut.
The briefs of both parties assume an assignment and discuss only the issue stated above. We hesitate to decide the technical ‘assignment’ issue without further briefing and a more complete treatment of the issue.