F. E. HOLMES & SON CONSTRUCTION COMPANY, INC., Plaintiff and Counterdefendant-Appellant and Cross-Appellee, *v.* GUALDONI ELECTRIC SERVICE, INC., Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Fifth District    No. 80-606

Opinion filed April 13, 1982.

G. Patrick Murphy, of James W. Sanders and Associates, of Marion, for appellant.

Edward J. Kionka, of Carbondale, and Freddy Shapiro, of Murphysboro, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Counterdefendant, F. E. Holmes & Sons Construction Company, Inc. (hereinafter referred to as Holmes), brought an action to recover damages for breach of contract against counterplaintiff, Gualdoni Electric Service, Inc. (hereinafter referred to as Gualdoni Electric), in the circuit court of Williamson County. Gualdoni Electric filed a three-count counterclaim for damages for breach of three contracts. On request of Holmes, the court submitted to the jury special interrogatories relating to each count. The jury returned verdicts in favor of Gualdoni Electric on all three counts. The jury, however, answered a special interrogatory finding that Holmes had not breached the contract under count III. The court entered judgment in favor of Gualdoni Electric on count I and count II and entered judgment in favor of Holmes on the jury's answer to the special interrogatory on count III. Both parties have appealed from that part of the judgment entered against them.

The following issues are raised on appeal: (1) whether the jury verdicts in favor of Gualdoni Electric on count I and count II were against the manifest weight of the evidence; (2) whether the award of damages for breach of the contract under count I was not supported by the evidence; and (3) whether the trial court erred in entering judgment in favor of Holmes on the jury's answer to the special interrogatory on count III.

Warren King is owner and president of Gualdoni Electric which has its principal place of business at Murphysboro, Illinois. Richard Lynn Holmes is the secretary-treasurer of F. E. Holmes & Sons Construction Company located at Marion, Illinois. In the spring, 1978, Holmes entered into a contract with the Veterans Administration for the construction of a medical education annex to the V.A. Hospital in Marion, Illinois. Holmes was employed as general contractor for the project. On July 7, 1978, Holmes executed a subcontract with Warren King of Gualdoni Electric providing that Gualdoni Electric furnish all necessary electrical work on the project at the V.A. Hospital. This contract was the subject of count I in Gualdoni Electric's counterclaim.

On April 7, 1978, a separate contract was entered into between Holmes and Gualdoni Electric whereby Gualdoni Electric agreed to perform all electrical work involved in the construction of an air-conditioning unit to be installed at the V.A. Hospital in Marion. This second contractual agreement was the subject of count II of the counterclaim.

Count III of Gualdoni Electric's counterclaim concerned an alleged breach of a third contract executed by the parties on January 10, 1978. This contract related to the renovation project undertaken by Holmes and Gualdoni Electric on the First United Methodist Church in Murphysboro, Illinois. All three contracts were drafted by Holmes and were basically the same standard form and included similar provisions.

Gualdoni Electric commenced work on the medical education annex project at the V.A. Hospital in the summer of 1978. On August 14, 1978, Gualdoni Electric submitted its first pay request to Holmes and received payment for its services September 18, 1978. Subsequently, Gualdoni Electric submitted similar periodic pay requests on an approximate monthly basis and payments were obtained from the general contractor, Holmes.

A total of 10 pay requests were submitted by Gualdoni Electric to Holmes between August 1978 and June 1979 for work completed by Gualdoni Electric on the project. Payments were made on seven of these requests prior to stoppage of work by Gualdoni Electric on May 24, 1979. Warren King testified at trial that the reason he ordered the Gualdoni Electric workmen to walk off the project was because of the untimeliness in payments on the subcontractor's monthly billings. The time delay between pay requests and payments varied from 34 days to 63 days. King testified that such delays were unreasonable and not in accordance with the 30-day period considered to be the construction trade norm for payments. King further testified that he informed Holmes by letter of his intention to suspend performance on all three projects pending receipt of the outstanding overdue payments for work completed by Gualdoni Electric. At the time of the suspension of work, Gualdoni Electric had been paid $37,277.47 on the medical education annex contract price of $69,872.03. The jury found Holmes in material breach of contract and awarded Gualdoni Electric $20,560.60.

Count II of Gualdoni Electric's counterclaim related to the air-conditioning project at the V.A. Hospital and, like count I, involved nonpayment of money for services rendered. It was Gualdoni Electric's contention that Holmes was in breach of contract for failing to make reasonable, timely payments for work completed on the air-conditioning project. Moreover, King testified that Gualdoni Electric's tenth pay request dated March 15, 1979, which was resubmitted May 16, 1979, had never been paid in full by Holmes. Gualdoni Electric was awarded damages in the amount of $3,907.08 that was due on the final pay request.

As to count III, the trial court vacated the jury's verdict and award of $1,584.50 in favor of Gualdoni Electric on the contract concerning the Methodist Church project in Murphysboro, Illinois. Judgment notwith-

standing the verdict was entered for Holmes because of an inconsistent finding in a special interrogatory.

■■ The first issue raised is whether there was evidence from which the jury could conclude that Holmes breached the medical education annex contract, under count I, and the air-conditioning contract, under count II. As to both contracts, Holmes argues that Gualdoni Electric breached the contracts on May 24, 1979, by ordering its employees off the jobsites and stopping work. In this regard, Holmes first contends that paragraph 5.D. of the subcontracts establishes that it was the intention of the parties to make payment to Holmes by the Veteran's Administration a condition precedent to Holmes' duty to pay Gualdoni Electric. Holmes further contends that on the date performance was suspended, Holmes had paid Gualdoni Electric all sums allowed on its accounts by the Veteran's Administration, and, therefore, the suspension of work was in breach of contract.

Paragraph 5.D. of the subcontracts provided the following:

> "The contractor agrees to pay the subcontractor the amount allowed to the contractor on account of the subcontractor's work to the extent of the subcontractor's interest therein."

We agree with the finding of the trial court that the contractual provision was ambiguous. Therefore, the meaning of the provision, a fact question, was presented for determination by the jury. (*Brady Brick & Supply Co. v. Lotito* (1976), 43 Ill. App. 3d 69, 356 N.E.2d 1126.) The evidence at trial supports the conclusion that the parties did not intend paragraph 5.D. of the subcontract to impose a condition precedent to Holmes' duty to pay Gualdoni Electric.

■■ ■ Where a party claims that his own language creates a condition precedent to his performance, it must be established clearly that the parties intended to create a condition at the time of contracting. (*South Division Credit Union v. Deluxe Motors, Inc.* (1976), 42 Ill. App. 3d 219, 355 N.E.2d 715.) Here, the form contracts were provided by Holmes. The price to be paid Gualdoni Electric for its performance was stated in each contract. All witnesses agreed that the payment process consisted of Gualdoni Electric submitting its requests for payment to Holmes, who would incorporate them into its requests made to the Veteran's Administration. After approval of the requests, the Veteran's Administration would pay Holmes, who would then pay Gualdoni Electric. The evidence was conflicting, however, regarding Holmes' duty to pay Gualdoni Electric if Holmes did not receive payment by the Veteran's Administration. King testified that he hadn't thought about the meaning of paragraph 5.D. at the time of contracting but that he did expect to receive payment even if Holmes was not paid. Holmes testified that he had paid Gualdoni

Electric all sums approved by the Veteran's Administration. In addition, we note that payment to Holmes by the Veteran's Administration was not within the control of Gualdoni Electric. Therefore, we hold that the evidence supports the conclusion that the contract imposed an obligation on Holmes to pay Gualdoni Electric after receipt of payment by the Veteran's Administration or within a reasonable period of time if such payment was not received.

■■ Because nonpayment by the Veteran's Administration did not discharge Holmes' duty of performance, the question becomes whether Holmes made payment to Gualdoni Electric within a reasonable time. Gualdoni Electric, in support of the judgments with respect to counts I and II, argues that it suspended performance justifiably because Holmes failed to make timely payments. The failure to make installment payments of the contract price as provided in a building or construction contract is a substantial breach of the contract and gives the contractor the right to cease work and recover the value of the work performed. (*Brady Brick & Supply Co. v. Lotito* (1976), 43 Ill. App. 3d 69, 356 N.E.2d 1126.) If Holmes had a duty to pay Gualdoni Electric every month and without justification failed to make payment, then Holmes' failure was in breach of contract and Gualdoni Electric's suspension of its performance was not a breach.

■■ The issue as to which party breached the contract is a question presented to the trier of fact, and, its finding will not be disturbed unless it is contrary to the manifest weight of the evidence. (*B & C. Electric, Inc. v. Pullman Bank & Trust Co.* (1981), 96 Ill. App. 3d 321, 421 N.E.2d 206.) King testified that at a preconstruction meeting he was told to submit his pay request before the 15th of the month and that he would be paid by the 10th of the following month. He later testified that he had not been told when to submit his pay requests but that he understood that he would be paid monthly. Jack Moore, a construction manager employed by Southern Illinois University, testified that a reasonable period of time for payment under State contracts was 30 days. Holmes testified that Gualdoni Electric submitted requests for payment approximately monthly and that they were paid approximately monthly. Bill Atkinson, a heating and cooling contractor, testified that a reasonable period of time for payment under construction contracts was about 45 to 55 days. From the evidence, the jury could have concluded that a reasonable period of time for payment under the contracts was 30 days. As to the medical education annex contract, under count I, the record indicates that payments to Gualdoni Electric were made repeatedly late; the excess over 30 days ranging from 4 to 34 days. As to the air-conditioning contract, under count II, the 11th pay request was submitted on May 16, 1979, only eight days prior to Gualdoni Electric's suspension of work. The 11th request,

however, was a resubmission of the 10th pay request, dated March 15, 1979, which had not been paid. Although the evidence at trial presented a close case, we are unable to conclude that the jury's verdicts on counts I and II were contrary to the manifest weight of the evidence.

Holmes next contends that the award of damages for breach of contract under count I was not supported by the evidence and was excessive. In this regard, Holmes first argues that the damage award improperly included an amount for lost profits because the lost profits were not proved sufficiently.

■■ At the outset, we note that Gualdoni Electric may be entitled to an award of lost profits. Lost profits will be allowed as compensation for breach of contract where the following conditions are met: (1) the court is satisfied that the wrongful acts of defendant caused the loss; (2) at the time the contract was entered into, the profits were reasonably within the contemplation of the defaulting party; and (3) the lost profits can be proved with reasonable certainty. (*Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494.) Here, the jury found that Holmes breached the medical education annex contract. In addition, the profits sought by Gualdoni Electric arose out of that breached contract and not a collateral transaction. Therefore, lost profits are recoverable if proved with reasonable certainty. The problem with the award of lost profits to Gualdoni Electric is that the profits were calculated erroneously.

We discussed the calculation of profits lost by breach of contract in *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494. Net lost profits are determined by subtracting the expenses necessary for plaintiff's full performance from the contract price because these expenses are generally avoided by the defendant's breach. Plaintiff's cost of performance is comprised of direct costs (labor and materials) and indirect costs (overhead). The direct costs and that portion of indirect costs which can be avoided by defendant's breach, called variable indirect costs, are deducted from the contract price. In contrast, that portion of indirect costs which cannot be reduced by defendant's breach, called fixed indirect costs, are not subtracted from the contract price.

■■ Here, Gualdoni Electric introduced into evidence three outstanding requests for payment. The payment requests itemized the costs of labor and materials previously supplied. In addition, prospective profit and overhead were listed on the requests. The profit and overhead, however, were combined, and no evidence was presented as to the exact amount of each. Furthermore, no evidence was introduced to prove the specific components of Gualdoni Electric's overhead figure. Although Gualdoni Electric can be compensated for its fixed indirect costs, it cannot recover its variable indirect costs. If the variable indirect costs were included in the overhead figures, then Gualdoni Electric was overcompensated. We

conclude, therefore, that the award of lost profits on the evidence presented was error.

■■ Holmes next argues that the damage award improperly included $3,353 for materials supplied by the Simplex Company. It was undisputed that Gualdoni Electric had not paid the Simplex Company. The Simplex Company gave notice of a lien to Holmes because of the nonpayment. The evidence suggests that Gualdoni Electric did not submit a lien waiver with its payment request as required by the contract. The requirement of a lien waiver was a condition precedent to Holmes' duty to pay. (See *John J. Calnan Co. v. Talsma Builders, Inc.* (1979), 77 Ill. App. 3d 221, 395 N.E.2d 1076.) Therefore, on remand, the status of the bill and lien should be determined and the issue resolved accordingly.

Holmes also argues that the damage award was excessive because the jury made a computational error. Because the cause is being remanded for a new trial on the issue of damages, it is unnecessary to discuss this alleged error.

Finally, we note that the jury was not instructed adequately as to the measure of damages. Gualdoni Electric's issue instruction given to the jury stated, in part, the following: "The plaintiff further claims that defendant wrongfully withheld payment for previously rendered materials, equipment, labor and services." The instruction relating to burden of proof submitted by Holmes and given to the jury stated that plaintiff had the burden of proving, among other things, "that the plaintiff is entitled to certain sums for previously rendered materials, equipment, labor, and services." No instruction was given, however, to inform the jury of the elements of damages or the basis of assessment of damages.

In its cross-appeal, Gualdoni Electric contends that the trial court erred in entering judgment notwithstanding the verdict on count III in favor of Holmes. In support of its contention, Gualdoni Electric argues that section 65 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 65) is unconstitutional, and, therefore, an inconsistent finding in a special interrogatory does not control perforce a general verdict, citing *Albaugh v. Cooley* (1980), 88 Ill. App. 3d 320, 410 N.E.2d 873. Gualdoni Electric further argues that the special verdict is against the manifest weight of the evidence.

At the outset, we note that the supreme court reversed *Albaugh* and found it unnecessary to rule on the constitutionality of section 65. (*Albaugh v. Cooley* (1981), 87 Ill. 2d 241, 429 N.E.2d 837.) According to the supreme court, the question presented on review is whether the jury finding in the special interrogatory was against the manifest weight of the evidence.

■■ Gualdoni Electric, however, failed to preserve this issue for review. Gualdoni Electric made a specific objection to the tendered special in-

terrogatories at the conference on instructions. But, Gualdoni Electric did not move to vacate the answer to the special interrogatory nor did it file a post-trial motion objecting to the answer. Supreme Court Rule 366(b)(2)(iii) provides that in jury cases a party may not urge on appeal an issue not argued, and therefore preserved, in his post-trial motion. (73 Ill. 2d R. 366(b)(2)(iii).) Therefore, we find that Gualdoni Electric failed to preserve the issue as to whether the special interrogatory was against the manifest weight of the evidence. *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 433; but see *Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 412 N.E.2d 638.

The judgment of the Circuit Court of Williamson County is affirmed insofar as judgment was entered against Holmes finding it in breach of contract as to count I, and the judgment is affirmed in its entirety as to counts II and III. The award of damages in the amount of $20,560.60 on count I is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part; remanded.

HARRISON and WELCH, JJ., concur.