No. 2--96--0162

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

STERLING FREIGHT LINES, INC.;        )  Appeal from the Circuit Court

THOMAS E. RALEIGH, as Trustee        )  of Du Page County.

in bankruptcy for Sterling           )

Freight Lines, Inc.; and             )

MICHAEL SMALL, as Successor in       )

Interest of Sterling Freight         )

Lines, Inc., Bankrupt,               )

                                     )  No. 89--L--1633

     Plaintiffs-Appellants,          )

                                     )

v.                                   )

                                     )

PRAIRIE MATERIAL SALES, INC.,        )  Honorable

                                     )  Bonnie M. Wheaton,

     Defendant-Appellee.             )  Judge, Presiding.

_________________________________________________________________

     JUSTICE INGLIS delivered the opinion of the court:

     Plaintiff, Sterling Freight Lines, Inc., sued defendant,

Prairie Material Sales, Inc., for breach of contract.  During a

bifurcated bench trial, the circuit court of Du Page County first

found defendant liable for breach of contract.  After the trial on

the issue of damages, the court determined plaintiff's damages

arising from the breach to be $84,820.  Plaintiff appeals from the

damages award.  We affirm in part and reverse in part and remand.

     Defendant is in the ready-mix concrete business.  Plaintiff

was a bulk hauling company.  In 1975, defendant and plaintiff

signed an exclusive hauling agreement giving plaintiff the

exclusive right to haul bulk cement and additives from cement

manufacturers to defendant's plants located in the southern suburbs

and south side of Chicago.  The agreement ran from June 1975 to

June 1981 and included two two-year options by which plaintiff

could extend the contract.

     Plaintiff hauled bulk cement for defendant during the life of

the contract.  In 1980, plaintiff chose to exercise its option to

extend the hauling contract.  In June 1980, defendant purchased A-1

Cartage (A-1), a hauling company.  On January 20, 1981, defendant

terminated the contract.  Plaintiff thereafter filed for bankruptcy

in 1983.

     During the damages trial, Raymond Throckmorton, plaintiff's

expert, testified that plaintiff's damages from January 1981 to 

June 1984 due to defendant's breach totaled $1,657,119.  Further,

when he adjusted for the effect of inflation through October 1995,

the damages totaled $2,567,469.

     Concerning his methodology, Throckmorton testified that he

first calculated plaintiff's dry bulk revenues for the period

beginning January 1981 and ending June 1984.  This was accomplished

by taking the 10 months of dry bulk revenue generated during fiscal

year 1980 (March 1980 to January 1981) and figuring a monthly

average.  This figure was further modified by the percentage of dry

bulk hauls made on defendant's behalf compared to the total number

of dry bulk hauls to arrive at a final monthly average.  This final

monthly average was used as a base number for the fiscal years 1981

through 1984.  Throckmorton then calculated a growth rate based on

A-1's growth during the relevant time period and applied it to the

base number.  Throckmorton next calculated the expenses saved by

defendant's breach in a similar fashion and subtracted them from

the revenues to arrive at the total damages amount of about $1.7

million.  He finally calculated an inflation multiplier for the

period of March 1981 through September 1995 to arrive at the

inflation-adjusted figure of about $2.6 million.

     Defendant did not present an expert witness of its own, but

challenged Throckmorton's methodology during cross-examination. 

Defendant accepted plaintiff's general methodology but disagreed

with three assumptions:  (1) the percentage of plaintiff's overall

business attributable to defendant; (2) the growth rate to be

applied to plaintiff's business; and (3) which expenses should be

used to calculate plaintiff's damages.  

     After the evidence was presented, the trial court rejected

plaintiff's figure for mix of business, which was based on a six-

year average (representing the life of the contract).  Instead, the

court used a figure for mix of business for the year immediately

preceding the breach.  Next, the court declined to apply any growth

rate over the remainder of the contract, finding that both the

plaintiff's and defendant's proposed growth rates were too

speculative.  Finally, the court rejected plaintiff's tally of

expenses and instead included fixed costs and depreciation in the

damages calculation.  The court also determined that an adjustment

for inflation would be improper in this case.  The court found that

plaintiff had incurred damages of $84,820 arising from defendant's

breach of the exclusive hauling agreement.

     Defendant raises a number of issues on appeal, all of which

are encompassed by the general question of whether the trial court

correctly calculated the damages arising from the breach of

contract.  Defendant specifically challenges the trial court's

deduction of fixed overhead expenses from gross contract revenues;

the trial court's failure to apply an inflation adjustment factor

to the judgment; the trial court's rejection of plaintiff's growth

factor; and the trial court's rejection of plaintiff's mix-of-

business percentage.

     Generally, the "monetary award [of damages] should, to the

extent possible, put the nonbreaching party in the position he

would have been in had the contract been performed."  Ollivier v.

Alden, 262 Ill. App. 3d 190, 196 (1994).  Damages must also be

proved with reasonable certainty.  F.E. Holmes & Son Construction

Co. v. Gualdoni Electric Service Inc., 105 Ill. App. 3d 1135, 1141

(1982).  Additionally, while lost profits, gross profits less

costs, provides the proper measure of damages, the parties disagree

about the method that should have been used to calculate

plaintiff's lost profits.

     Plaintiff initially asserts that the trial court erred when it

deducted plaintiff's fixed overhead expenses from the gross

contract revenues.  According to plaintiff, lost profits are

calculated by subtracting direct and variable costs from the

contract price.  Plaintiff defines direct and variable costs as

those costs which are avoided as a result of the breach.  Fixed

overhead, states plaintiff, is incurred regardless of the contract

at issue and cannot be avoided as a result of a breach.  Therefore,

plaintiff asserts that they are not included in the damages

calculation and it was error for the trial court to include fixed

overhead expenses as a part of its damages calculation.  Defendant

does not specifically address plaintiff's argument.  Instead,

defendant essentially contends that the trial court's assessment of

damages was not against the manifest weight of the evidence.

     We will not disturb the damages assessed by a trial court

sitting without a jury unless its judgment is against the manifest

weight of the evidence.  Lynch v. Precision Machine Shop, Ltd., 93

Ill. 2d 266, 278 (1982).  A trial court's damages assessment is

against the manifest weight of the evidence when it ignored the

evidence or used an incorrect measure of damages.  B&Y Heavy

Movers, Inc. v. Fluor Constructors, Inc., 211 Ill. App. 3d 975, 984

(1991); MBC, Inc. v. Space Center Minnesota, Inc., 177 Ill. App. 3d

226, 234 (1988).  It is on this latter ground that we hold that the

trial court erred in determining plaintiff's damages.

     Damages assessed for lost profits are to be based on net

profits.  Getschow v. Commonwealth Edison Co., 111 Ill. App. 3d

522, 534 (1982).  Net profits are calculated by "subtracting the

expenses necessary for plaintiff's full performance from the

contract price because these expenses are generally avoided by the

defendant's breach."  Holmes, 105 Ill. App. 3d at 1141.  The cost

of performance is made up of direct costs, like labor and

materials, and indirect costs, such as overhead.  Holmes, 105 Ill.

App. 3d at 1141.  Those costs which are avoided as a result of the

defendant's breach are deducted from the contract price.  Holmes,

105 Ill. App. 3d at 1141.  These avoided expenses include the

direct costs and the indirect costs (overhead), called variable

indirect costs, avoided by the defendant's breach.  Holmes, 105

Ill. App. 3d at 1141.  The indirect costs that cannot be avoided by

the defendant's breach, called fixed indirect costs, are not

deducted from the contract price.  Holmes, 105 Ill. App. 3d at

1141.

     In the instant case, the trial court erred calculating lost

profits.  The trial court stated:

          "In this particular case involving a small business, it

     defies common sense to exclude fixed costs when [defendant]

     constituted in the area of 60 percent of the total revenues of

     [plaintiff].

          Perhaps the elimination of fixed costs would be proper in

     a large corporation where the breach constitutes a fairly

     small amount of the total revenue, but it is clear to the

     Court that failure to consider the fixed costs and

     depreciation would lead to a very skewed result."

The court then proceeded to deduct plaintiff's fixed costs from its

gross contract revenues in arriving at its damages amount.  This

was error.

     The facts in this case are governed by Central Information

Financial Services, Ltd. v. First National Bank, 128 Ill. App. 3d

1052 (1984).  There, the defendant's breach cost the plaintiff one

of only two contracts on which it was working.  Central

Information, 128 Ill. App. 3d at 1062.  In determining damages, the

court reasoned that " 'since overhead is fixed and nonperformance

of the contract produced no overhead cost savings, no deduction

from profits should result.' "  Central Information, 128 Ill. App.

3d at 1062, quoting Vitex Manufacturing Corp. v. Caribtex Corp.,

377 F.2d 795, 798 (3d Cir. 1967).  The court determined that an

appropriate damages calculation would be "to award damages for the

contract price less the award of expenses saved because the injured

party is not required to perform."  Central Information, 128 Ill.

App. 3d at 1063.  This method is simple, "because it does not

require any determination as to the amount of overhead to allot to

the breached contract" and "will reach a fair result."  Central

Information, 128 Ill. App. 3d at 1063.

     The instant case is factually similar Central Information and

thus deserves similar treatment.  Here, plaintiff lost slightly

less than half of its business due to defendant's breach of the

contract.  Plaintiff presented evidence that its overhead expenses

could not be avoided due to the breach.  Under the rationale of

Central Information, fixed overhead expenses should be entirely

excluded from the damages calculation.  Hence, the trial court

erred by including plaintiff's overhead expenses in its damages

calculation.  Accordingly, the damages award must be reversed and

the cause remanded to the circuit court in order to recalculate

plaintiff's net profits under the exclusive hauling agreement.

     Plaintiff next asserts that the trial court's determination

that defendant accounted for 61.4% of plaintiff's business under

the exclusive hauling agreement was against the manifest weight of

the evidence.  Plaintiff contends that its mix-of-business

calculation, using a six-year average, was mandated by the evidence

presented at trial.  We disagree.

     The evidence presented at trial showed that the number of

hauls plaintiff made for defendant declined by 30 points from 87%

in fiscal year 1979 to 57% in fiscal year 1981.  Plaintiff contends

that this decrease was due to defendant pulling its business away

from plaintiff in anticipation of its breach.  Thus, according to

plaintiff, its use of a six-year average corrects for the effect of

defendant's move away from plaintiff.  

     This contention overlooks testimony showing that plaintiff was

also expanding its business into hauling liquid chemicals and

edibles.  Both Throckmorton, plaintiff's expert, and Richard

Jousma, Jr., plaintiff's president, admitted that plaintiff's

business strategy was to expand its customer base with new business

and to move towards becoming a chemicals and edibles hauler.

     Based on this evidence, the trial court chose to use the mix

of business from the year immediately preceding the breach because

it was "the most representative measure of that mix of business

since it was the time immediately prior to the breach."  The trial

court also noted that the mix of business over the length of the

contract had "vastly fluctuat[ed]."  The trial court's rejection of

plaintiff's six-year average for the mix of business was thus

supported by evidence that the decline of plaintiff's business was

due to its own actions and business strategy.  Accordingly, we

cannot say that the trial court's determination that the proper

mix-of-business factor was 61.4% was against the manifest weight of

the evidence.

     Plaintiff next asserts that the trial court erred in its

damages calculation by refusing to apply a growth factor to its

calculation of plaintiff's lost profits.  We hold that the trial

court's determination was not against the manifest weight of the

evidence.

     At trial, plaintiff used A-1, defendant's captive hauling

company, as a model on which to base its own projected growth for

the period of the breach.  Plaintiff contended that, but for

defendant's breach, it would have made the hauls that A-1 actually

made during the period of the breach.  Plaintiff claimed that the

growth in the number of hauls A-1 made for defendant during the

period of the breach was similar to the growth it would have

experienced itself had defendant not breached the contract.  Thus,

according to plaintiff, A-1's growth approximated that which it

should have experienced.

     Plaintiff also asserts that "no evidence was admitted to

support the [trial c]ourt's assumption that [plaintiff's] business

would experience zero growth during the period of [defendant's]

breach."  Plaintiff claims that "the only evidence presented at

trial regarding [its] growth rate established that [plaintiff]

would have experienced substantial positive growth during the

period of [defendant's] breach."  This is not strictly true.

     Defendant elicited evidence to show that A-1 was not an

independent hauling company like plaintiff, but rather, it was a

captive subsidiary.  Plaintiff's expert, Throckmorton, did not

examine the actual industry profitability of noncaptive hauling

companies during the early 1980s, even though those years were a

tough period for hauling companies.  Throckmorton also did not know

whether A-1 received any capital investment from defendant, whether

it hauled the same products as plaintiff, or whether it hauled to

the same plants as plaintiff.  Moreover, defendant's vice-president

testified that A-1 hauled significantly different materials, hauled

to different plants, and worked more shifts than plaintiff. 

Finally, Throckmorton did not investigate what caused A-1's growth. 

Thus, there was ample evidence to allow the trial court to conclude

that A-1 was not a comparable company to plaintiff and that a

growth factor based on A-1's performance was speculative. 

Accordingly, the trial court's rejection of the growth factor was

not against the manifest weight of the evidence.

     Plaintiff finally argues that the trial court erred as a

matter of law by refusing to adjust its lost profits award for

inflation.  Plaintiff contends that "it is proper to take into

account inflationary factors from the time of [the breach] to the

time of judgment."  We disagree.

     Plaintiff's "inflationary factor" is little more than a thinly

veiled attempt to secure prejudgment interest.  Under Illinois law,

prejudgment interest may be awarded pursuant to an agreement

between the parties or to a specific statutory provision (Weidner

v. Szostek, 245 Ill. App. 3d 487, 492 (1993)), or where damages are

liquidated or can be easily determined and calculated (Marvel

Engineering Co. v. Commercial Union Insurance Co., 118 Ill. App. 3d

844, 854 (1983)).  None of those circumstances are present here. 

Therefore, plaintiff is not entitled to an award of prejudgment

interest.

     Plaintiff attempts to justify its "inflation factor" by citing

to Getschow, 111 Ill. App. 3d at 533, and Raines v. New York

Central R.R. Co., 129 Ill. App. 2d 294, 302 (1970), rev'd on other

grounds, 51 Ill. 2d 428 (1972), for the proposition that an

adjustment due to inflation is proper when determining lost

profits.  These cases, however, are inapposite.  Getschow does not

affirmatively state that an inflationary adjustment is mandated in

a lost profits award, but, rather, found that such an award under

the facts of that case was not against the manifest weight of the

evidence.  Getschow, 111 Ill. App. 3d at 534.  Moreover, the use of

any inflationary adjustment there was not actually challenged on

the appeal.  Getschow, 111 Ill. App. 3d at 532-35.  Raines, on the

other hand, involved an award for a continuing physical injury,

damages for which would persist into the future.  Raines, 129 Ill.

App. 2d at 298.  The damages award in Raines sought to reduce the

plaintiff's lifelong injury to a present value.  By contrast,

damages in the instant case were incurred over a fixed period and

can, in principle, be determined.  Thus, the present-value problem

for future injury is not present in this case.  Accordingly,

plaintiff's reliance on these cases is misplaced.

     In summary, we find that the trial court erroneously

calculated plaintiff's damages by including plaintiff's fixed

overhead expenses in its damages calculation.  On remand, we direct

the trial court to exclude the amount of fixed overhead expenses

plaintiff would have incurred during the period of the breach from

its damages calculation.  See Central Information, 128 Ill. App. 3d

at 1063 (trial court should award damages for the contract price

less the award of expenses saved because the injured party is not

required to perform; this does not require any determination as to

the amount of overhead).  We note that the method the trial court

originally used, determining a profit margin, is acceptable, so

long as the trial court limits its consideration only to that

portion of plaintiff's business directly attributable to defendant

under the exclusive hauling agreement, rather than considering the

profit margin for the whole of plaintiff's business.

     For the foregoing reasons, the judgment of the trial court is

affirmed in part and reversed in part, and the cause is remanded

for further proceedings consistent with this opinion.

     Affirmed in part and reversed in part; cause remanded.

     GEIGER and HUTCHINSON, JJ., concur.