**INDUSTRIAL HARD CHROME, LTD., IHC Limited Partnership, and Bar Technologies, L.L.C., Plaintiffs/Counter–Defendants,**

v.

**HETRAN, INC., and Global Technology, Inc., Defendants/Counter–Plaintiffs.**

**No. 99 C 1716.**

United States District Court, N.D. Illinois, Eastern Division.

April 18, 2000.

John J. O'Malley, Michael D. Wexler, Daniel F. Lanciloti, Charles Chejfic, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for plaintiffs.

George W. Spellmire, Debra A. Winiarski, Jeffrey H. Bergman, Daniel C. Curth, H. Hollister Bundy, D'Ancona & Pflaum, Chicago, IL, Luanne R. Sacks, Michele D. Floyd, Crosby, Heafey, Roach & May, San Francisco, California, Robert P. Cummins, Thomas C. Cronin, Cummins & Cronin, L.L.C., Chicago, IL, for defendants.

## *ORDER*

ALESIA, District Judge.

Before the court are (1) thirteen motions *in limine* brought by plaintiffs Industrial Hard Chrome, Ltd. ("IHC") and Bar Technologies, L.L.C. ("Bar") (collectively "plaintiffs") and (2) five motions *in limine* brought by defendants Hetran, Inc. ("Hetran") and Global Technology, Inc. ("Global") (collectively "defendants").[1] The court addresses each motion in turn.

1. On April 13, 2000, defendants filed their amended responses to plaintiffs' motions *in*

## A. *Plaintiffs' Motions in Limine*

### 1. *Evidence of Wolfgang Salinger's arrest or detention in Korea and Hetran's lawsuit against Wolfgang Salinger*

Wolfgang Salinger ("Salinger") is a former employee of Hetran. Based upon plaintiffs' motion *in limine*, it appears that plaintiffs intend to call Salinger as a witness at trial. In 1996, Salinger was arrested in Korea for what plaintiffs refer to as a "private matter" (based upon defendants' motion, the arrest was not related to a matter relating to truth or veracity). Also, in January, 2000, Hetran filed a lawsuit against Salinger for, among other claims, misappropriation of trade secrets and conversion (for the theft of Hetran's confidential documents).

■ First, plaintiffs' motion *in limine* to exclude any evidence or reference to Salinger's arrest is granted. Evidence of his arrest does not go towards Salinger's credibility but is, in fact, inadmissible character evidence. *See* FED.R.EVID. 404, 608. Further, the court finds that such evidence would be highly prejudicial and, therefore, is also inadmissible under Federal Rule of Evidence 403. Thus, evidence and/or references to Salinger's arrest is barred. Accordingly, the court grants, in part, plaintiffs' motion *in limine* # 1.

■ Second, to the extent that plaintiffs' motion *in limine* # 1 seeks to exclude evidence regarding the lawsuit filed by Hetran against Salinger, that motion is granted insofar as any use of the evidence of the lawsuit other than for impeachment purposes, to challenge Salinger's credibility or truthfulness, or to show bias is barred. *See* FED.R.EVID. 404(a)(3), 608.

### 2. *Evidence referring to the book value of IHC stock, the transfer of ownership interest in IHC, and the wages and salaries of IHC employees*

Plaintiffs' second motion *in limine* seeks to exclude any evidence or reference to three separate issues: (1) the book value of IHC stock; (2) the transfer of ownership interest in IHC; and (3) the wages and salaries of IHC employees. The motion is granted in part and denied in part; the court discusses each in turn.

### (a) Book value of IHC stock

■ Plaintiffs claim that evidence referring to the value of IHC stock is irrelevant and prejudicial. The court disagrees. In their claim for damages, plaintiffs seek lost profits and a variety of other damages. Thus, plaintiffs have opened the door to their own profitability. Further, plaintiffs have failed to show how such information would be prejudicial. Thus, to the extent that the value of IHC stock is relevant to establishing or discrediting the amount of damages suffered by plaintiffs, the evidence is admissible.

### (b) Transfer of ownership interest

■ Plaintiffs seeks to exclude—on the basis of irrelevancy—any evidence relating to the transfer of ownership interest from C.G. Therkildsen ("Therkildsen"), the president of IHC and Bar, to his daughters. Defendants argue that this evidence is relevant to show the companies' profitability. The court finds that such evidence is wholly irrelevant in establishing the profitability of IHC or Bar. Moreover, to the extent that defendants would try to use the evidence in that fashion, its probative value would be greatly outweighed by the prejudicial nature of the evidence given the speculative and tenuous nature of such a connection. Thus, the evidence is

*limine.* While the court had directed defendants to file page 2 of response 9 which was missing in defendants' original responses, the court did not give leave to file amended responses. In fact, the court gave defendants leave to file the side-bound version of their responses. *See* Court Order dated April 13, 2000. Because defendants were not given leave to substantively amend their responses, the court has relied upon the original responses.

inadmissible under Federal Rules of Evidence 401 and 403. However, in the event that Therkildsen takes the stand and testifies regarding the ownership of IHC and Hetran, evidence of a transfer of interest may be used for the sole purpose of clarifying ownership.

### (c) Wages and salaries of IHC and Bar employees

 Plaintiffs seek to exclude any evidence relating to the wages and salaries earned by IHC and Bar employees as both irrelevant and prejudicial. Defendants claim this evidence is relevant to show that IHC and Bar's employees are incompetent, unqualified, and incapable of properly operating the Cell. The court finds that defendants argument lacks any merit. Evidence regarding wages and salaries earned by IHC and Bar employees is completely irrelevant in determining whether such employees are qualified or capable. Any inference made by defendants that wages or salaries do impact the employees' capabilities would be highly prejudicial. Thus, evidence referring to the wages and salaries of IHC and Bar employees is inadmissible. *See* FED.R.EVID. 401, 403.

In conclusion, the court grants plaintiffs' motion *in limine* # 2 to the extent that it seeks to exclude evidence referring to the transfer of ownership interest in IHC and the wages and salaries earned by IHC and Bar employees. However, the court denies plaintiffs' motion *in limine* # 2 with respect to evidence referring to the book value of IHC stock to the extent that such evidence may be relevant to the issue of damages.

### 3. *Evidence referring to the INS visit to IHC*

 In their motion *in limine* # 3, plaintiffs seek to exclude evidence referring to an Immigration and Naturalization Service ("INS") visit to IHC in 1995. Defendants claim that the INS visit, resulting

in a loss of 80 percent of IHC's labor force, is relevant to show either (1) IHC could not hire legal, and thus competent, workers, or (2) IHC lost its competent workers after the INS visit. It appears that what the defendants are arguing is that a person's status as a legal or illegal alien has a direct correlation to an employee's competency and ability. The defendants provide absolutely no foundation for these claims. The court finds that the INS visit to IHC has no relevancy to the present case: it does not have any bearing on the abilities of Bar's employees. Such evidence would only confuse a jury and prove prejudicial to the plaintiffs. Thus, the evidence referring to an INS visit is inadmissible. *See* FED.R.EVID. 401, 403. Accordingly, plaintiffs' motion *in limine* # 3 is granted.

### 4. *Evidence referring to the death of Bar employee David House*

 David House was an employee of Bar. He died while operating a loading crane during his training period at Bar. House's death is not relevant to any Bar employee's ability to operate the Cell: House was not operating the Cell and he was in his training period. This evidence's relevance is tenuous at best. Further, the prejudicial nature of this evidence is outweighed by any probative value it may have. *See* FED.R.EVID. 403. Thus, the evidence is inadmissible. Accordingly, the court grants plaintiffs' motion *in limine* # 4 to exclude any evidence referring to House's death.

### 5. *Expert or opinion testimony from Gerhard Wechtel*

 Plaintiffs' motion *in limine* # 5 to exclude Gerhard Wechtel ("Wechtel") as an expert witness is granted. Defendants did not disclose Wechtel as an expert and did not file an expert report. Thus, under Federal Rules of Civil Procedure 26(a)(2) and 37(c), Wechtel is excluded as an expert. *See* FED.R.CIV.P. 26(a)(2), 37(c).[2]

---

**2.** Defendants claim that they have no intention of calling Wechtel as an expert but do intend to have him offer opinion testimony

under Federal Rule of Evidence 701, which allows a lay witness to testify as to his opinions. FED.R.EVID. 701. The court will ad-

### 6. Document labeled "Hetran 12180"

Plaintiffs' motion *in limine* to exclude the document labeled "Hetran 12180" is denied. This document appears to be a warranty disclaimer. Plaintiffs claim that this document is not part of the contract entered into between IHC and Hetran and, therefore, cannot be introduced into evidence. Defendants, on the other hand, claim that the warranty was part of the agreement or mutual understanding between IHC and Hetran. The court cannot determine, in the abstract, whether this document was part of the agreement between IHC and Hetran. Thus, such a ruling must wait until the court hears the evidence at trial.

### 7. Exclusion of the expert testimony of either Samuel Bonnano or Marvin Devries

■ Plaintiffs motion *in limine* # 7 to exclude the testimony of either Samuel Bonnano or Marvin Devries as an expert witness is denied. The court rejects plaintiffs' argument that their testimony would be cumulative. As indicated in their respective expert reports, Bonnano and Devries will offer testimony on different aspects of the Cell: Bonnano will testify to the design and manufacture of the Cell, while Devries will testify about the Cell's operation. These are two different areas and relate to separate issues which plaintiffs themselves have raised in their complaint.

### 8. Exclusion of Gerhard Wechtel as a witness

Plaintiffs' motion *in limine* to exclude Mr. Wechtel as a witness is denied. While it appears from the parties' filings that the defendants have not been very helpful or forth-coming with plaintiffs concerning Mr. Wechtel, it was not impossible for plaintiffs to depose Mr. Wechtel previously. Further, the court has already issued an order allowing plaintiffs to depose Mr. Wechtel in Germany; plaintiffs have the right to depose Mr. Wechtel, now it is their responsibility to do so. Thus, Mr. Wecthel will be allowed to testify but only as a lay witness.

Defendants have stated in their response to plaintiffs' motions *in limine* # 5 and # 8 that they do intend to have Mr. Wecthel testify as to his opinions as a lay person. It is the understanding of the court that Mr. Wechtel is the designer of the Cell which is the focus of this litigation. The court has already ruled that Mr. Wechtel is not allowed to offer expert testimony. Thus, while he may be able to testify under Rule 701, the court will not allow the defendants to back-door expert testimony from a lay witness. The court cautions defendants that, "where, in order to express an opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Rule 702 [expert] opinion and not a rule 701 lay opinion." CHARLES E. WAGNER, FEDERAL RULE OF EVIDENCE CASE LAW COMMENTARY 733 (1999).

### 9. Evidence which contradicts testimony given during defendants' 30(b)(6) deposition

■ Plaintiffs' motion *in limine* # 9 to exclude evidence which contradicts testimony given during defendants' Rule 30(b)(6) deposition is denied. While Hetran and Global are bound by the testimony given by their designated representative during the Rule 30(b)(6) deposition, such testimony is not a judicial admission that ultimately decides an issue. The testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes. *See W.R. Grace & Co. v. Viskase Corp.*, No. 990 C 5383, 1991 WL 211647, at *2 (N.D.Ill. Oct.15, 1991).

### 10. Evidence referring or relating to defendants' unjust enrichment counterclaim

At this time, plaintiffs' motion *in limine* # 9 is denied. Defendants are allowed to dress this issue under section A(8), addressing plaintiffs' motion *in limine* # 8.

offer evidence which supports their claim. However, because it is not clear what evidence the defendants will seek to present, at this point the court cannot determine whether such evidence violates Federal Rule of Evidence 408. If, during the course of trial, defendants seek to introduce specific evidence which may be properly excluded under the Federal Rules of Evidence, plaintiffs are not barred from objecting at that time.

### 11. Evidence referring to plaintiffs' corporate structure

In their motion in limine # 11, plaintiffs seek to exclude evidence relating to their corporate structure. Plaintiffs claim that the defendants will use this evidence to imply that plaintiffs' corporate structure is improper. Thus, plaintiffs allege that this evidence is highly prejudicial. Defendants, on the other hand, claim that this evidence is relevant to the issue of damages. Despite these assertions, the court cannot determine from the parties' submissions how this evidence would be either relevant or prejudicial. Thus, the court denies this motion at this time. Such a ruling must wait until the court hears the evidence at trial.

### 12. Evidence and arguments regarding punitive damages and the net worth of plaintiffs

In their motion in limine # 12, plaintiffs seek to exclude evidence and argument regarding (1) punitive damages and (2) plaintiffs' net worth. First, with respect to punitive damages, the court grants plaintiffs' motion in limine # 12. In their counterclaim, defendants sought punitive damages only in Count II (Breach of Fiduciary Duties) and Count IV (Conversion). In a previous ruling, the court dismissed both Counts II and IV of defendants' counterclaim. Industrial Hard Chrome, Inc., et al v. Hetran, Inc., et al, 90 F.Supp.2d 952 (N.D.Ill. 2000). Because defendants do not seek punitive damages in any remaining count of their counterclaim, evidence or argument regarding punitive damages is irrelevant. Thus, evidence or argument regarding punitive damages is inadmissible. See FED.R.EVID. 403. Accordingly, the court grants in part plaintiffs' motion in limine # 12.

To the extent that plaintiffs' motion in limine # 12 seeks to exclude evidence regarding the net worth of plaintiffs, the motion is denied. In their motion in limine, plaintiffs do not address this issue beyond seeking to have such evidence excluded. There is no evidence that such information would be prejudicial to plaintiffs. However, if at trial plaintiffs seek to establish that this evidence is prejudicial, the court will revisit the ruling.

### 13. Evidence referring to insurance coverage

Plaintiffs' motion in limine # 13 to exclude any evidence or argument regarding insurance coverage is granted by agreement. The court further finds that neither party will be permitted to present evidence regarding insurance coverage. See FED. R.EVID. 411.

### B. Defendants' Motions in Limine

### 1. Evidence referring to paragraph 19 of the contract

■ Defendants' motion in limine # 1 to exclude evidence or reference to paragraph 19 of the contract is denied. It is unclear to the court how defendants can claim that a paragraph included in the actual written contract is not a part of the agreement between the parties. Defendants do not argue, nor can the court find, that there are any ambiguities on the face of the contract. The court will not look to letters and communications between the parties to determine whether an explicit portion of the contract was part of the actual agreement. Further, if defendants did not believe that paragraph 19 of the sale contract was a part of the agreement between the parties, such an issue should have been raised during contract formation, in response to the plaintiffs' complaint, or in one of the myriad motions to

dismiss filed by defendants (as it is the basis for Count III of plaintiffs' fourth amended complaint).

### 2. *Exclusion of witness John Szobocsan*

Defendants' motion *in limine* # 2 to exclude the testimony of John Szobocsan ("Szobocsan") is denied. Plaintiffs may call Mr. Szobocsan to testify as a lay witness. *See* FED.R.EVID. 701. However, while he may be able to testify under Rule 701, the court will not allow the plaintiffs to back-door expert testimony from a lay witness such as Mr. Szobocsan.

### 3. *Trial and demonstrative exhibits regarding undisclosed evidence*

Defendants seek to exclude the admission of plaintiffs' trial exhibits, which defendants claim are based upon undisclosed evidence. From defendants' motion *in limine*, it is unclear to the court exactly which exhibits defendants seek to exclude. In reviewing the Parties Final Pre–Trial Order on Plaintiffs' Claims, defendants claim to object to Exhibits 241–54 through a motions *in limine*. However, in the introductory and conclusory paragraphs of this motion *in limine*, defendants' claim that they seek to exclude Plaintiffs' Exhibits 237–51. Then, in the body of the same motion *in limine*, defendants address the exclusion of only Exhibits 241–47. (Defs.Mot.¶ 2), 255–63 (*Id.* ¶ 10), 288–89 (*Id.* ¶ 11). The court will only address the admissibility of those exhibits which defendants specifically address in the present motion *in limine;* the remaining exhibits are admissible. Thus, because defendants have offered no basis for the exclusion of Plaintiffs' Exhibits 237–40, those exhibits are admissible. Further, while defendants address Exhibits 255–63, (Defs.Mot.¶ 10) they do not provide a specific basis for exclusion. Thus, those exhibits are admissible.

First, the court denies defendants' motion *in limine* to the extent that it seeks to exclude Plaintiffs' Exhibits 241–47. In their motion *in limine*, defendants argue that Exhibits 241–47 contain undisclosed evidence in the form of summaries and charts. Plaintiffs, on the other hand, claim that those exhibits were made for the purpose of trial and are based on summaries of information obtained from disclosed evidence. In support of this argument, plaintiffs provide specific cites to the record indicating the source of the information summarized on the exhibits. While the court finds this argument to be credible, it cannot determine, without viewing the exhibits, whether these exhibits contain evidence which was discoverable yet undisclosed or whether they reflect a summary of disclosed evidence. Thus, such a ruling must wait until the court has an opportunity to examine the evidence at trial.

Finally, to the extent that defendants' seek to exclude any of the listed exhibits based upon the argument that the exhibits are not reliable or authenticated, the court defers the ruling until it can hear evidence at trial which may authenticate such exhibits.

### 4. *Evidence and argument regarding lost profits*

Defendants seek to exclude any evidence regarding lost profits. Specifically, defendants seek to exclude any evidence of those lost profits referred to by plaintiffs in their response to interrogatories and in Plaintiffs' Statement of Uncontested Facts (as submitted with the Parties' Final Pre–Trial Order). In their response, plaintiffs claim that they are seeking actual—versus future—lost profits, which they claim is addressed in the expert report submitted by Thomas Kabler.

Under Illinois law, plaintiffs are not entitled to future lost profits. *See Alexander Binzel Corp. v. Nu–Tecsys Corp.*, No. 91 V 2092, 2000 WL 310304, at * 13 (N.D.Ill. March 24, 2000); *Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust*, 51 F.3d 1319 (7th Cir.1995) (finding that Illinois law does not permit a new business to recover lost profits). Thus, to the extent that defendants' motion *in limine* seeks to exclude evidence

relating to future lost profits, the motion is granted. However, plaintiffs claim that they are not seeking future lost profits but are only seeking actual lost profits.

Under Illinois law lost profits must be proven with reasonable certainty. *F.E. Holmes & Son Constr. v. Gualdoni Elec. Serv., Inc.*, 105 Ill.App.3d 1135, 61 Ill.Dec. 883, 435 N.E.2d 724, 728 (1982). In their response to this motion *in limine*, Plaintiffs have offered no evidence as to the amount of lost profits, how lost profits were calculated or foreseeable, or how defendants have caused this loss. However, plaintiffs do argue that their expert, Thomas Kabler, addressed the issue of actual lost profits in his expert report. Specifically, plaintiffs claim that Kabler's determination of "cost inefficiencies" is considered to be a determination of actual lost profits. To the extent that plaintiffs' expert can reliably calculate the amount of cost inefficiencies, the plaintiffs are permitted to present such evidence. *See Mi-Jack Prod. v. Internat'l Union of Operating Eng'rs*, No. 94 C 6676, 1995 WL 680214, at * 11 (N.D.Ill. Nov.14, 1995); *see also infra* Sect. II.B.5.

### 5. *Exclusion of testimony of Thomas Kabler under Daubert*

Defendants seek to exclude the testimony of plaintiffs' expert Thomas Kabler ("Kabler"). Based upon his expert report, Kabler will testify to the amount of damages which plaintiffs have suffered as a result of defendants' alleged breach of contract. Defendants challenge both the methodology used by Kabler and the reliability of his opinions, including Kabler's qualifications.

First, the court will address the issue of Kabler's qualifications. Based upon his *curriculum vitae*, Kabler has been a certified public accountant for over twenty years. More importantly, he has been specializing in business valuations and damage calculations for over seven years. Kabler is currently a partner and director in the litigation services group at an accounting firm. Further, he has been

qualified as an expert in business valuations and damage calculations in five trials and has testified in numerous depositions. Thus, this court finds that Kabler is qualified to testify as an expert on the issue of damages in the present case.

Having determined that Kabler is qualified, the court must now address whether Kabler's testimony is based upon reliable, scientific reasoning and methodology. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also Kumho Tire Co., Ltd. v. Patrick Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (applying the "gate-keeper" function of the court to all expert testimony). It appears from the parties' submissions and Kabler's expert report that Kabler determined the amount of damages by calculating the plaintiffs' actual expenses (incurred in setting up its steel processing business) and deductions based upon adjusted profits and values gained by plaintiffs. This methodology does not, in itself, seem unreliable. However, nearly all of Kabler's damages are based upon the assumption that Bar would not have been created but for defendants' representations that it could deliver a Cell suitable to perform at the contract specifications (the "assumption")—which plaintiffs claim defendants have failed to do. Thus, plaintiffs seek to recover all of their costs incurred in setting up Bar Technologies as a company.

In general, contract damages are limited to those damages that are reasonably foreseeable at the time of contract formation. However, plaintiffs may be entitled to recover the amount of damages which would return them to the position they would have been in if the contract had never been executed. While the court has serious doubts as to the validity of plaintiffs' assertion that it would not have created Bar but for the defendants' representations, the court cannot determine at this time whether plaintiffs can prove such an allegation. Consequently, the court cannot determine whether Kabler's use of this

assumption makes his calculations unreliable. Thus, at this time, the court denies defendants' motion *in limine* to exclude the testimony of Thomas Kabler. Such a ruling must be deferred until the court can determine whether the plaintiffs can prove this assumption with reasonable certainty. However, the court has serious doubts as to the propriety of Kabler's calculations with respect to the amount of damages incurred based upon that assumption. The court recognizes that defendants have raised specific questions regarding the reliability of certain portions of Kabler's damages calculations. The court, however, will defer addressing those arguments: those specific challenges may be moot if plaintiffs fail to present reasonable evidence of the reliability of the underlying assumption.

Further, it appears that the only element of damages unrelated to the above-discussed assumption is the amount for "cost inefficiencies." Kabler claims that he based this calculation on the Cell's performance reports and labor expenses incurred operating the Cell. The method does not seem inherently unreliable so as to require exclusion from evidence. However, this does not preclude defendants from challenging this calculation at trial (either on cross examination or with rebuttal testimony).

### CONCLUSION

For the foregoing reasons, the court grants in part and denies in part plaintiffs' motions *in limine*. Further, the court grants in part and denies in part defendants' motions *in limine*.

1. Plaintiffs' motion *in limine* # 1 is granted with respect to evidence of the arrest and granted, except for impeachment purposes, with respect to the lawsuit.
2. Plaintiffs' motion *in limine* # 2 is granted in part and denied in part.
3. Plaintiffs' motion *in limine* # 3 is granted.
4. Plaintiffs' motion *in limine* # 4 is granted

5. Plaintiffs' motion *in limine* # 5 is granted.
6. Plaintiffs' motion *in limine* # 6 is denied.
7. Plaintiffs' motion *in limine* # 7 is denied.
8. Plaintiffs' motion *in limine* # 8 is denied.
9. Plaintiffs' motion *in limine* # 9 is denied.
10. Plaintiffs' motion *in limine* # 10 is denied.
11. Plaintiffs' motion *in limine* # 11 is denied.
12. Plaintiffs' motion *in limine* # 12 is granted in part and denied in part.
13. Plaintiffs' motion *in limine* # 13 is granted.
14. Defendants' motion *in limine* to exclude evidence of paragraph 19 of the contract is denied.
15. Defendants' motion *in limine* to exclude the testimony of John Szobocsan is denied.
16. Defendants' motion *in limine* to exclude undisclosed evidence is denied.
17. Defendants' motion *in limine* to exclude evidence of lost profits is granted in part and denied in part.
18. Defendants' motion *in limine* to exclude the expert report and testimony of Thomas Kabler is denied.