BAUER, Circuit Judge.
 

 A jury found that defendant breached its exclusive distribution contract with plaintiff. After a separate bench trial to determine damages, the district court awarded plaintiff consequential damages for defendant’s breach of the contract. Plaintiff later obtained a lien on the United States trademarks of defendant’s product to secure the damages award. Defendant challenges the propriety of the damages award and the lien. Plaintiff contends that the damages award does not encompass its full consequential damages. We affirm the -judgment of the district court.
 

 I
 

 Plaintiff, Adams Apple Distributing Company (Adams Apple), is an Illinois corporation which distributes tobacco-related products wholesale. Defendant, Papeleras Reunidas, S.A. (Papeleras), is a Spanish corporation which manufactures cigarette rolling papers. Until 1975, Papeleras’s cigarette papers were sold in the United States by several distributors, including Adams Apple. In January 1975, Papeleras and Adams Apple entered into a written agreement whereby Adams Apple obtained exclusive distribution rights to certain of Papeleras’s “Bambú” line of cigarette papers (Bambú papers) for a period of five years.
 

 Under the agreement, Adams Apple was required to purchase no less than a stated quantity of Bambú papers for the first year of the contract, with that minimum amount to increase by at least 10% each year for the length of the contract. The initial price was also specified and Papeler-as was guaranteed a 3% semi-annual price increase, although the actual increase was negotiable every six months. Adams Apple was also required to purchase an interest in Papeleras’s publicly held stock, bn which Papeleras guaranteed Adams Apple a minimum 10% profit annually. Finally, Adams Apple promised to use “maximum effort” to promote Bambú papers, and Pa-peleras agreed to pay specified advertising rebates to Adams Apple quarterly.
 

 During the first year of the contract a number of disputes arose. Adams Apple alleged that Papeleras failed to pay the rebates or the guaranteed stock profit, that Papeleras was shipping Bambú papers to other U.S. distributors, and that the packaging for Bambú papers violated the labeling requirements of the Federal Trade Commission. Negotiations ensued, but the parties were unable to resolve these problems. In February 1976, Adams Apple regarded the contract as breached and stopped payment on a $71,424 check to Papeleras for goods which Adams Apple had'received. On September 19, 1976, Adams Apple filed suit in the district court seeking damages for breach of the agreement. Papeleras counterclaimed for the $71,424 on an account stated theory and also for tortious interference with its prospective business relations.
 

 The case was bifurcated for trial and in 1981 the issue of liability was tried before a jury. The jury returned a special verdict, finding:
 

 1) that Papeleras failed to pay Adams Apple $28,973 in contract rebates;
 

 
 *928
 
 2) that Papeleras failed to pay Adams Apple an $8,000 rebate in connection with Adams Apple’s purchase of a particular type of paper known as “Big Bambú;”
 

 3) that Papeleras breached the agreement by failing to pay Adams Apple the guaranteed profit on the Papeleras stock which Adams Apple had purchased;
 

 4) that Papeleras did not fail to reimburse Adams Apple for marketing costs associated with the sale of Bambú papers;
 

 5) that Papeleras did not ship Bambú papers to other U.S. distributors in violation of the agreement;
 

 6) that Adams Apple failed to pay Papel-eras $71,424 for Bambú papers which Adams Apple had received;
 

 7) and that Adams Apple did not interfere with Papeleras’s prospective business relations.
 

 Upon a motion by Adams Apple on July 13, 1981, the trial judge made findings as to damages pursuant to Rule 49 of the Federal Rules of Civil Procedure. The trial judge found that Adams Apple was not precluded from recovering consequential damages by its failure to pay Papeleras $71,424 for goods it received because that claim was tried on an account stated theory, not as a breach of the contract. Alternatively, the trial judge found that Papeler-as’s breach of the agreement preceeded Adams Apple’s stop payment order on the check. Accordingly, the trial court ruled that Adams Apple was entitled to consequential damages.
 

 At the damages trial, the trial court heard testimony from financial and economic experts for both parties. In addition, Papeleras presented much of the same evidence adduced at the liability trial to support its claim that Adams Apple failed to mitigate its damages. After all of the evidence was presented, the trial judge concluded that Adams Apple had not failed to mitigate its damages from lost sales because it did not buy Bambú papers from a successor U.S. distributor or seek to revive the contract. The trial judge then engaged in a detailed analysis of Adams Apple’s lost profits from sales and ordered an award of damages for these lost profits in accordance with the calculations set forth in the court’s memorandum of opinion. This award was later calculated to be $1,409,-180. The court also entered judgment for Adams Apple in the amount of $5,000 for lost profits on its investment in Papeleras’s stock for the first year of the contract, but did not award lost stock profits for the remaining four years of the contract term. The court further entered judgment for Adams Apple in the amount of $36,793 for the unpaid rebates and entered judgment for Papeleras in the amount of $71,424 for its counterclaim.
 

 In October 1984, Adams Apple moved the trial court to impose a lien on Papeleras’s United States trademarks for the Bambú papers. Papeleras opposed this motion, arguing that at that time it was undergoing liquidation in Spain, and that under Spanish law creditors are not permitted to seize assets of a company undergoing liquidation to satisfy their claims. In support of this argument Papeleras offered the affidavit of an attorney for the Spanish officials involved in liquidating Papeleras, but did not provide the court with Spanish law.
 

 The district court expressed concern that the pendency of this appeal would prevent Adams Apple from being considered a creditor during the liquidation of Papeleras’s assets in Spain. The district court concluded that this would substantially prejudice Adams Apple, and that Papeleras would be obtaining the benefits of a supersedeas bond without posting such a bond. Moreover, the court reasoned that since no sale of the trademarks was planned, imposing the lien would not violate Spanish law as it had been generally described to the court. The court did state, however, that it would set aside the lien if Papeleras provided the court with certified English translations of Spanish law which showed a conflict with imposing a lien on the trademarks and if Adams Apple’s status as a creditor was recognized in Spain. Accordingly, the trial court granted Adams Apple’s motion to impose a lien on Papeleras’s U.S. trademarks for Bambú papers.
 

 
 *929
 
 II
 

 Papeleras first argues that its failure to pay Adams Apple the rebates and the guaranteed stock profit required by the contract cannot form the basis for an award of consequential damages because “more fundamental” breaches are required for such an award to be proper. Def’s br. at 12. Papeleras then asserts that the district court only found these “more fundamental” breaches during the damages trial, and that these findings were impermissibly in contravention of the jury’s verdict at the liability trial. We find that Papeleras has misconstrued the nature of the trial court’s findings at the damages trial and we disagree with its contention that awarding consequential damages was improper.
 

 As a remedy for breach of contract in Illinois, the injured party may be entitled to an award of consequential damages measured by its lost profits.
 
 F.E. Holmes & Son Constr. Co., Inc. v. Gualdoni Electric Service, Inc.,
 
 105 Ill.App.3d 1135, 61 Ill.Dec. 883, 887, 435 N.E.2d 724, 728 (1982).
 
 [1]
 
 Illinois law defines a “material or total breach” as a “failure to do an important, substantial or material undertaking set forth in a contract.”
 
 Anderson v. Long Grove Country Club Estates, Inc.,
 
 111 Ill.App.2d 127, 249 N.E.2d 343, 349 (1969). The determination of whether a breach is material, thereby entitling the non-breaching party to damages, is a question of fact to be determined by the trial court.
 
 F.E. Holmes,
 
 61 Ill.Dec. at 886, 435 N.E.2d at 727;
 
 Anderson,
 
 249 N.E.2d at 349. Therefore, we will reverse the trial court’s finding of a breach of contract only if that finding was clearly erroneous.
 
 United States v. $73,277, United States Currency,
 
 710 F.2d 283, 288 (7th Cir.1983); Rule 52(a), Fed.R.Civil PROC.
 

 At the liability trial, the jury found that: 1) Papeleras failed to pay Adams Apple $29,793 in contract rebates; 2) Papel-eras failed to pay Adams Apple an $8,000 rebate for the purchase of “Big Bambú” cigarette papers; and 3) Papeleras failed to pay Adams Apple the guaranteed stock profit in breach of the agreement. We find no error in the trial court’s conclusion that Papeleras’s failure to perform these conditions constituted a material breach of the contract entitling Adams Apple to an award of consequential damages measured by lost profits. Papeleras’s argument that “more fundamental” breaches were required for the court to award consequential damages is without legal support.
 

 The trial court issued its ruling that Adams Apple was entitled to consequential damages after a conference with the parties pre-dating the damages trial.
 
 See
 
 Order of July 13, 1981. The trial court’s findings which Papeleras contends contradict the jury’s verdict were made at the damages trial in considering Papeleras’s argument that Adams Apple failed to mitigate its damages after Papeleras breached the contract. These findings are therefore unrelated to the trial court’s ruling that Adams Apple was entitled to consequential damages and are irrelevant to the issue before us.
 

 Ill
 

 Adams Apple contends that in addition to the $1,409,180 in lost sales profits which it was awarded, it was entitled to an award of $50,000 for the money which it invested in Papeleras stock and an award of $25,000 in lost profits for the 10% profit on the stock which Papeleras guaranteed for each of the five years of the contract. The trial court awarded Adams Apple only $5,000,
 
 *930
 
 which was commensurate with a 10% profit on the stock for the first year of the contract. Papeleras asserts that awarding any damages for lost stock profits was improper.
 

 Adams Apple argues that by awarding damages for lost stock profits for only the first year of the contract, the district court did not place Adams Apple in the position it would have been in had the contract been completed. Adams Apple contends that its lost stock profits should be based on the contract’s full five year term, as were its damages for lost sales profits. Adams Apple correctly states that under Illinois law the policy of contract damages is to place the non-breaching party in the monetary position it would have been in had the contract been completed.
 
 See, e.g., Crum v. Krol,
 
 99 Ill.App.3d 651, 54 Ill.Dec. 864, 872, 425 N.E.2d 1081, 1089 (1981). However, under Illinois law the plaintiff has the burden of establishing that damages were sustained and providing the court with a reasonable basis for computing those damages.
 
 Schoeneweis v. Herrin,
 
 110 Ill.App.3d 800, 66 Ill.Dec. 513, 519, 443 N.E.2d 36, 42 (1982) (citations omitted). Damages may not be awarded on the basis of conjecture or speculation; if the plaintiff establishes that he is entitled to damages but fails to provide a proper basis with which to determine those damages, he may be awarded only nominal damages.
 
 Id.
 
 (citations omitted) Further, factors in mitigation of damages must be considered in awarding damages.
 
 Wanderer v. Plainfield Carton Corp.,
 
 40 Ill.App.3d 552, 351 N.E.2d 630, 634-35 (1976). Finally, a district court’s findings as to proof of damages are findings of fact which will not be set aside on appeal unless clearly erroneous.
 
 Lincoln Nat’l Life Ins. Co., et al. v. NCR Corp.,
 
 772 F.2d 315, 320 (7th Cir.1985).
 

 In its memorandum opinion at the conclusion of the damages trial, the district court stated that evidence at the damages trial indicated that Adams Apple’s stock investment was profitable and that the appreciation in value and dividends of the stock exceeded the 10% return guaranteed by Papeleras. Mem.Op. at 23-24. Evidence was also presented that Adams Apple’s president traded in the stock in 1975, and the court found that Adams Apple had opportunities to sell the stock after the contract was terminated.
 
 Id.
 
 Nonetheless, the trial judge felt constrained by the jury’s verdict that Papeleras had breached the agreement by failing to pay Adams Apple its stock profit for 1975, and therefore awarded Adams Apple $5,000 in damages, which represented a 10% profit on Adams Apple’s investment in the stock.
 

 We do not find error in the district court’s refusal to award damages for lost stock profits for the remaining four years of the contract. As noted above, the trial judge found “no evidence in the record that would support the conclusion that the stock investment was unprofitable.” Mem.Op. at 23. To the contrary, the evidence showed that Adams Apple profited from its stock.
 
 Id.
 
 Further, although the trial judge found that Adams Apple was able to sell the stock after Papeleras breached the contract, the court did not find that Adams Apple attempted to sell the stock in an effort to mitigate its damages. Finally, there is no indication in the record before us that Adams Apple provided the court with a method for computing damages due to lost stock profits which took into consideration evidence of stock profits from dividends, appreciation in the stock’s value, and purchases of stock at below market value through share amplifications. We therefore find that the district court’s refusal to award damages for lost stock profits for the last four years of the contract was not error.
 

 Papeleras, on the other hand, contends that no award of damages for lost stock profits was proper. Despite the evidence noted above, the court stated that “no records were introduced by [Papeleras] to support this testimony and the jury clearly rejected ic at the liability trial.” Mem.Op. at 24. In view of the jury’s verdict, the trial court accepted the evidence that Adams Apple received no profit for 1975. We find no error in the trial court’s award of the minimum amount of stock profits guaranteed to Adams Apple for
 
 *931
 
 1975. This award is in accordance with the jury’s verdict at the liability trial and was supported by the testimony of Adams Apple's president at the damages trial.
 
 See
 
 Mem.Op. at 24. It was thus not clearly erroneous. We therefore affirm the trial court’s award of $5,000 to Adams Apple for its lost stock profits.
 

 IV
 

 Last, Papeleras contends that the district court improperly placed a lien on the U.S. trademarks for Papeleras’s cigarette papers. Papeleras argues that a trademark is not subject to any involuntary judicial sale, and that therefore the district court’s order was invalid because a lien is predicated upon a right to enforcement by involuntary judicial sale. In addition, Papeleras argues that even if imposition of the lien was possible, principles of international comity should prevent a U.S. court from giving priority to a U.S. corporation in enforcing a claim against any asset of a foreign corporation which is engaged in foreign bankruptcy proceedings.
 

 We reject Papeleras’s argument that a lien cannot be placed on a trademark. It is true that a trademark is not a property right in gross which may be sold apart from the business or goodwill with which the trademark has been associated.
 
 Marshak v. Green,
 
 746 F.2d 927, 929 (2d Cir.1984);
 
 Mister Donut of America, Inc. v. Mr. Donut, Inc.,
 
 418 F.2d 838, 842 (9th Cir.1969); J. McCaRthy, Trademarks & UnfaiR Competition § 18:9 (1973) (“If the tangible assets of a bankrupt are sold without goodwill or trademarks being sold, the trademark ceases to exist.”). But a trademark is a form of property,
 
 Internat’l Order of Job’s Daughters v. Lindeburg & Co.,
 
 633 F.2d 912, 919 (9th Cir.1981);
 
 People ex rel. Scott v. Cardet Internat’l, Inc.,
 
 24 Ill.App.3d 740, 321 N.E.2d 386, 390 (1974), which exists in connection with the goodwill or tangible assets of a business.
 
 United Drug Co. v. Rectanus Co.,
 
 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141 (1918);
 
 United States Ozone Co. v. United States Ozone Co.,
 
 62 F.2d 881, 885-86 (7th Cir. 1933). Thus, a trademark is an asset of a bankrupt’s estate which is saleable in bankruptcy proceedings along with the bankrupt’s goodwill or tangible business assets.
 
 United States Ozone Co.,
 
 62 F.2d at 886; J. McCarthy, Trademarks & Unfair Competition § 18:9 (1973) (citations omitted).
 
 Cf. Money Store v. Harriscorp Finance, Inc.,
 
 689 F.2d 666, 676 (7th Cir.1982) (trademark validly transferred along with goodwill even though no tangible assets transferred). Therefore, Papeleras’s assertion that a trademark is not subject to an involuntary judicial sale is incorrect.
 

 In addition, we find no authority for the proposition that an equitable lien may not be imposed on a business’s trademark alone. To the contrary, under Illinois law an equitable lien “is merely a remedy for a debt. It exists wholly independent of the thing to which it is attached and does not divert the debtor of either title or possession. An equitable lien is simply a charge on property for the purpose of security.”
 
 Chirekos v. Chirekos,
 
 33 Ill.App.3d 606, 338 N.E.2d 140, 143 (1975) (citation omitted). Therefore, imposing an equitable lien on a trademark does not seek to give the lienholder an in gross property right to the trademark itself. For these reasons, we hold that it is permissible to impose an equitable lien on a business’s trademark.
 

 Finally, we reject Papeleras’s argument that principles of international comity require that we vacate the district court’s order imposing the lien. Papeleras assumes that the lien will interfere with the Spanish bankruptcy court’s distribution of Papeleras’s assets to its creditors, but as our previous discussion indicates, it is possible that the lien will have no effect on the distribution of Papeleras’s assets. If Pa-peleras’s tangible business assets are sold without its U.S. trademarks or its goodwill, the trademarks will “cease to exist.” J. McCarthy,
 
 supra
 
 at § 18:9. Therefore, the interference with the Spanish bankruptcy court which Papeleras assumes may never occur. On the record before us, no actual conflict with the Spanish proceeding exists.
 

 Moreover, the district court imposed the lien merely to protect Adams
 
 *932
 
 Apple s status as a creditor before the Spanish bankruptcy court, not to give Adams Apple a more favorable position than other creditors, which Papeleras contends is impermissible under Spanish law, or to otherwise interfere with the Spanish bankruptcy court’s distribution of assets to Pa-peleras’s creditors. The district court’s only concern was that Papeleras’s appeal to this court would prevent Adams Apple’s claim from being considered by the Spanish court. The district court stated, however, that if Papeleras provided the court with certified translations of Spanish law showing a conflict between Spanish law and the court’s order and showed that the Spanish court considered Adams Apple a creditor, it would vacate its lien order. The' record indicates that no such showing was made. We therefore find that the district court properly balanced deference for the proceedings of the Spanish bankruptcy court with the need to prevent prejudice to Adams Apple’s rights as a creditor.
 

 For the reasons stated above, the judgment of the district court is Affirmed.
 

 [1]
 

 . In order for the injured party to recover lost profits, the following conditions must be met:
 

 1) the wrongful acts of the defendant caused the loss;
 

 2) at the time the parties entered into the agreement, profits were reasonably within the contemplation of the defaulting party;
 

 3) the lost profits can be proved with a reasonable certainty.
 

 F.E. Holmes,
 
 61 Ill.Dec. at 887, 435 N.E.2d at 728 (citing
 
 Rivenbark v. Finis P. Ernest, Inc.,
 
 37 Ill.App.3d 536, 346 N.E.2d 494 (1976)). Papeler-as does not "quarrel with the quantum of consequential damages found to have been sustained by [Adams Apple]", Def's br. at 11, or contend that the award of consequential damages was otherwise improper.