Ellis HENDERSON, Plaintiff–
Appellant,

v.

Michael F. SHEAHAN and J.W.
Fairman, Defendants–
Appellees.

No. 98–2964.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1999.

Decided Nov. 16, 1999.

Rehearing Denied Feb. 2, 2000.*

* Judge Fairchild voted to grant petition for rehearing as to the court's holding in Part I.A.

of the opinion.

Michael T. Brody (argued), Jenner & Block, Chicago, IL, for plaintiff-appellant.

David Adelman (argued), Office of the State's Attorney of Cook County, Federal Litigation Division, Chicago, IL, for defendant-appellee.

Before FAIRCHILD, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Plaintiff Ellis Henderson was a pretrial detainee at the Cook County jail for approximately four-and-one-half years. He entered the jail in January 1990 and, except for a one month period in which he was housed in another facility during his murder trial, remained incarcerated in the jail until he was transferred to an Illinois state prison facility in June 1994. The Defendants in this case are Michael F. Sheahan, Sheriff of Cook County, and J.W. Fairman, the former Executive Director of the Cook County Department of Corrections.

While detained at the Cook County jail, Henderson was housed in or had access to a non-smoking tier of the facility. Despite the tier's non-smoking designation, Henderson claimed that inmates routinely violated the non-smoking policy causing him to be exposed to excessive levels of second-hand smoke throughout his detention. According to Henderson's complaint, the Defendants made no meaningful effort to separate non-smoking detainees from smoking detainees. As a result, there was no significant difference in the amount of second-hand smoke present between the smoking and non-smoking tiers. Henderson further alleged in his complaint that jail officials forced him to share a cell with smokers for the majority of his stay, and, therefore, he could not escape the smoke that permeated his tier by remaining in his cell.

Henderson's complaint charged that his continuous exposure to excessive levels of second-hand smoke caused him to experience difficulty in breathing, chest pains, dizziness, drowsiness, sinus problems, burning sensations in his throat and headaches. Henderson also alleged that he may experience significant health problems in the future as a result of being forced to breathe cancer-causing second-hand smoke throughout his four-and-one-half year detention.

According to Henderson's complaint, the Defendants have dealt with his physical and medical problems in an indifferent and callous manner. Henderson claimed that he complained to jail authorities on several occasions about his exposure to excessive levels of second-hand smoke and filed a number of grievances requesting that the Defendants either reduce the levels of smoke in his tier or transfer him to a tier where inmates were not allowed to smoke—all to no avail. He believes the Defendants' treatment of him reflected a jail policy to place non-smokers in housing environments with smokers regardless of any adverse health consequences and to

prohibit transfers of non-smoking detainees to compliant non-smoking tiers.

The Defendants denied Henderson's assertion regarding the conditions of his confinement. The Defendants also denied that they had received any notice from Henderson that he was suffering any negative health effects due to his exposure to second-hand smoke. Although Henderson indicated that he made multiple trips to Cook County hospital because of an unrelated digestive problem, the Defendants asserted that there was no indication Henderson complained to health workers of excessive levels of smoke in either his tier or cell or that the Defendants were made aware of any such complaints. The Defendants further maintained that it was jail policy to review and act upon any request from a non-smoking detainee seeking a transfer to a non-smoking tier subject to safety and security concerns. In addition, the Defendants claimed that it was jail policy to transfer an inmate or detainee to a non-smoking tier if medical personnel indicated that such a transfer was medically necessary.

In 1994, Henderson filed this *pro se* suit against the Defendants under 42 U.S.C. § 1983, alleging that his continuous exposure to excessive levels of second-hand smoke during his detention at the Cook County jail violated his constitutional rights afforded under the Eighth and Fourteenth Amendments. In addition to declaratory and injunctive relief,[1] Henderson sought monetary damages for both the actual injuries he had suffered, and for the increased risk that he might incur harm in the future, as a result of the Defendants' alleged deliberate indifference to his exposure to second-hand smoke. The Defendants moved to dismiss Henderson's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted the Defendants' motion in part, dismissing Henderson's claim to the extent it sought monetary damages for the alleged actual, present injuries he had suffered, but denied the Defendants' motion with respect to Henderson's claim for any increased risk of future injury caused by his exposure to second-hand smoke at the Cook County jail.

With regard to Henderson's present injury claim, the district court determined that the current ailments of which Henderson complained were too minor to create a valid constitutional claim. With respect to Henderson's future injury claim, the court concluded that Henderson had adequately stated a claim under *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), by alleging that his prolonged involuntary exposure to excessive levels of second-hand smoke (also known as "environmental tobacco smoke" or "ETS") during his incarceration at the Cook County jail posed an unreasonable risk of serious damage to his future health.

By 1995, Henderson had obtained appointed counsel and the Defendants filed their first motion for summary judgment with respect to Henderson's future injury claim. The district court limited its consideration of the Defendants' motion to the issue of qualified immunity, which the court granted in part and denied in part. Although the court held that the Defendants were entitled to qualified immunity from liability in their individual capacities, it concluded that the qualified immunity doctrine did not shield the Defendants from potential liability in their official capacities and allowed Henderson's future injury claim to proceed against the Defendants on that basis. Neither party appeals this decision.

In 1996, the Defendants filed a second motion for summary judgment on Henderson's future injury claim. The district court allowed Henderson a limited time to conduct discovery, during which

---

1. Henderson's subsequent transfer to a state prison facility mooted his claims for declara- tory and injunctive relief. *See Martin v. Davies*, 917 F.2d 336, 339 (7th Cir.1990).

the court entered a default judgment against the Defendants as a sanction for their failure to comply with Henderson's discovery requests. The default judgment was eventually vacated and the Defendants' pending motion for summary judgment was stricken without prejudice and with leave to refile upon completion of discovery.

In 1997, the Defendants filed a third motion for summary judgment. The court first found that genuine issues of material fact remained as to whether Henderson was exposed against his will to excessive levels of second-hand smoke during his stay at the Cook County jail and whether the jail officials were deliberately indifferent to the risk of future serious injury from this exposure—the two *prima facie* elements of Henderson's future injury claim. However, the court found that there was no genuine issue of material fact as to the issue of whether Henderson could actually prove that he has suffered an increased compensable risk of future serious health problems that was proximately caused by the Defendants' actions. Based on this reasoning, the district court granted the Defendants' motion for summary judgment.

On appeal, Henderson challenges the district court's dismissal of his present injury claim and the court's grant of summary judgment in favor of the Defendants as to his future injury claim.

# I. ANALYSIS

## A. Present Injury Claim

■■■ The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This duty includes the obligation to "ensure that inmates receive adequate food, clothing, shelter, protection, and medical care." *Oliver v. Deen,* 77 F.3d 156, 159 (7th Cir.1996); *see also Farmer,* 511 U.S. at 832, 114 S.Ct. 1970. However, not every injury or deprivation suffered by a prisoner translates into constitutional liability for prison officials responsible for the prisoner's health and well-being. *See Farmer,* 511 U.S. at 834, 114 S.Ct. 1970; *see also Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Oliver,* 77 F.3d at 159. Instead, only a jail official's "deliberate indifference to a prisoner's serious illness or injury states a cause of action" under the Eighth Amendment.[2] *Estelle,* 429 U.S. 105, 97 S.Ct. 285; *see also Payne for Hicks v. Churchich,* 161 F.3d 1030, 1041 (7th Cir.1998) ("A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but

2. Although Henderson's complaint asserted that the Defendants' deliberate indifference to his serious medical needs violated his constitutional rights under both the Eighth and Fourteenth Amendments, we note that Henderson, as a pretrial detainee, was protected by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies only to convicted persons. *See Estate of Cole v. Fromm,* 94 F.3d 254, 259 n. 1 (7th Cir.1996). Whether Henderson's present injury claim is analyzed under the Eighth or Fourteenth Amendment ultimately makes no practical difference to our resolution of his challenge on appeal because we already have held that § 1983 claims brought under the Fourteenth Amendment are to be analyzed under the

Eighth Amendment test. *See Higgins v. Correctional Med. Servs. of Illinois, Inc.,* 178 F.3d 508, 511 (7th Cir.1999); *see also Mathis v. Fairman,* 120 F.3d 88, 91 (7th Cir.1997) (indicating that the Eighth Amendment standard for persons who have been convicted is also the applicable standard for pretrial detainees under the Fourteenth Amendment). These prior decisions applied the same standard of "deliberate indifference to a serious illness or injury" to claims under both the Eighth and Fourteenth Amendments without differentiation. For his Fourteenth Amendment due process claim, Henderson, therefore, must establish the same objective and subjective components required under an Eighth Amendment claim for cruel and unusual punishment.

nevertheless failed to take appropriate steps to protect him from a known danger."), *cert. denied,* —— U.S. ——, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999).

■ The Supreme Court has recently made clear that a viable Eighth Amendment claim must contain both an objective and subjective component. *See Farmer,* 511 U.S. at 834, 114 S.Ct. 1970; *see also Oliver,* 77 F.3d at 159. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *see also Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir.1996) (indicating that "for liability to exist the medical need must be objectively serious"). As the Supreme Court explained in *Farmer,* to be sufficiently serious "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

■ The subjective component requires the detainee allege that the jail officials knew of a substantial risk of serious injury to the detainee but nevertheless failed to take reasonable measures to prevent that harm from occurring. *See Payne for Hicks,* 161 F.3d at 1041; *Armstrong v. Squadrito,* 152 F.3d 564, 577 (7th Cir.1998). "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

■ In essence, to state a valid constitutional claim under the Fourteenth Amendment for present injuries sustained as a result of excessive exposure to second-hand smoke, Henderson's complaint had to allege that the second-hand smoke caused him to suffer "serious" existing health problems and that the Defendants were deliberately indifferent to his situation. The district court dismissed Henderson's claim for present injuries on the ground that he failed to satisfy the first component—that the injuries he alleged to have suffered constituted an objectively, sufficiently "serious" injury or medical need. In the court's words:

> None of the identified ailments appear[ed] to be the sort of objectively serious health problem that would support a constitutional claim against a correctional officer or medical professional involved in treatment or refusal to treat these claims. Accordingly, the Court finds no basis for such a claim against Defendants who are not alleged to have any direct role in treating or refusing to treat Plaintiff for his various minor ailments.

Henderson submits that the district court erred in concluding that his alleged injuries did not constitute a "serious" injury or medical need as a matter of law and dismissing his claim for monetary relief for the injuries he had already suffered due to his exposure to second-hand smoke. Given the favorable light in which his complaint must be viewed, Henderson believes his existing injuries were objectively, sufficiently serious and, therefore, that his complaint states a valid cause of action under the Fourteenth Amendment.

■ We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) *de novo,* accepting all of the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *See Mallett v. Wisconsin Div. of Vocational Rehabilitation,* 130 F.3d 1245, 1248 (7th Cir.1997). A *pro se* complaint is held to "less strin-

gent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). By the same token, however, a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir.1997).

■ Even applying the liberal standards applicable in *pro se* cases, we agree with the district court that Henderson has failed to state a legally cognizable claim for present injuries under § 1983. A serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1373 (citation omitted). Henderson's complaint does not allege that a physician either diagnosed him as having a medical condition that necessitated a smoke-free environment or treated him for any condition or ailment brought about by his exposure to second-hand smoke—even though he made several trips to medical facilities during the course of his stay at the Cook County jail. Moreover, conspicuously absent from Henderson's complaint is any allegation that a physician ever recommended or ordered that he be removed from the allegedly smoky tier in which he was housed and placed in a non-smoking environment.

Nor do we believe that a layperson would consider the injuries alleged in Henderson's complaint to be so "serious" as to require a physician's care and attention. Instead, the injuries of which Henderson complains—breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy—are,

objectively speaking, relatively minor. *See Oliver*, 77 F.3d at 160–61. While we do not doubt that these ailments caused him some distress and discomfort, they are not the sort of objectively serious injury or medical need that amounts to a denial of "the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970, necessary to state a violation of the Fourteenth Amendment. In fact, we have already determined that these sorts of injuries are not sufficiently serious to be constitutionally actionable. *See Oliver*, 77 F.3d at 158–61 (concluding at the summary judgment stage that an asthmatic prisoner failed to demonstrate that he had a serious medical need for a non-smoking environment even though his exposure to second-hand smoke aggravated his asthmatic condition causing him to suffer chest pains, difficulty in breathing, dizziness, nausea and other signs of discomfort).

*Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), does not aid Henderson in establishing an objectively serious present injury. Although *Helling* held that exposure to ETS might satisfy the objective prong of the deliberate indifference test under some circumstances, *Helling* did not hold that exposure to ETS qualifies as an objectively serious injury *per se*. *Id.* at 34–35, 113 S.Ct. 2475. Henderson still must show that his present injury from ETS exposure was objectively serious. Henderson was unable to establish any reasonable basis for finding a significant medical condition or ailment at all resulting from his exposure to ETS.

In sum, we conclude that the district court properly dismissed Henderson's claim for present injuries because he failed to allege ailments that are sufficiently serious to constitute a violation of the Fourteenth Amendment.

**B. Future Injury Claim**

The Supreme Court recognized in *Helling* that the Eighth Amendment protects prisoners not only from a prison official's deliberate indifference to a prisoner's cur-

rent serious health problems, but also from an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's future health. *Id.* at 33–35, 113 S.Ct. 2475. In *Helling*, a prisoner in a Nevada state prison filed suit against prison officials under § 1983 complaining, *inter alia*, that his exposure to second-hand smoke at the prison involuntarily subjected him to an increased risk of future health problems. *Id.* at 28, 113 S.Ct. 2475. Before the Court, prison officials contended the prisoner could not sustain a claim under the Eighth Amendment against them for maintaining prison conditions that merely threatened to cause health problems in the future, no matter how serious the threat. The prison officials submitted that the prisoner had to prove that he was currently suffering from serious medical problems in order to show an actionable violation of the Eighth Amendment. *Id.* at 32–33, 113 S.Ct. 2475. The Supreme Court disagreed and held that a prisoner stated a claim under the Eighth Amendment "by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an *unreasonable risk of serious damage to his future health.*" *Id.* at 35, 113 S.Ct. 2475 (emphasis added).

■ In order to sustain a claim for future harm caused by exposure to second-hand smoke, *Helling* provides that a plaintiff must satisfy the objective and subjective elements necessary to prove an Eighth Amendment violation, with only a slight variation from the present injury context. *Id.* at 35–36, 113 S.Ct. 2475. With respect to the objective component of a future injury claim, a plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." *Id.* at 35, 113 S.Ct. 2475. This objective inquiry requires more than just a "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS," it also requires that Henderson show "that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* at 36, 113 S.Ct. 2475. With respect to the subjective factor, Henderson must prove that prison officials were deliberately indifferent to his plight as a non-smoker placed in a smoking environment. *Id.*

■ Henderson's complaint alleged that his continuous exposure to cancer-causing second-hand smoke at the Cook County jail placed him at greater risk of experiencing significant and serious health problems in the future. As previously indicated, Henderson also alleged that the Defendants did not have any viable policy that permitted the separation of non-smoking detainees from smoking detainees. He further contended that the Defendants ignored all of his grievances concerning his conditions of confinement and never responded to his requests for a non-smoking cellmate. Applying the standards established in *Helling*, the district court found that Henderson had sufficiently alleged the necessary objective and subject components of an Eighth Amendment claim, and the court allowed Henderson's future injury claim to proceed to the summary judgment stage.

The district court subsequently entered summary judgment in favor of the Defendants. The court first found that genuine issues of material fact remained as to whether Henderson was exposed against his will to unreasonably high levels of second-hand smoke during his stay at the Cook County jail and whether the jail officials were deliberately indifferent to the risk of future serious injury from this exposure—the two prima facie elements of Henderson's future injury claim. However, the court determined that Henderson could not meet his burden of establishing a compensable injury that would entitle him to an award of monetary damages. The court concluded that there was no genuine issue of material fact as to whether Henderson could prove that he has suffered an increased risk of developing future serious health problems that was

proximately caused by the Defendants' actions. On appeal, Henderson challenges the court's grant of summary judgment in favor of the Defendants.

■■■■ We review a district court's grant of summary judgment *de novo. See Adler & Drobny, Ltd. v. United States,* 9 F.3d 627, 629 (7th Cir.1993). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 149 (7th Cir.1994).

■■■■ It is axiomatic that under general principles of tort law a plaintiff may

recover monetary damages "only when a defendant breaches a duty owed to [the] plaintiff, and the breach causes cognizable legal harm to the plaintiff." *Babcock v. White,* 102 F.3d 267, 271 (7th Cir.1996); *see also Carey v. Piphus,* 435 U.S. 247, 255–58, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (reasoning that damages are available under § 1983 for actions found to have violated constitutional rights and to have caused compensable injury). Ordinarily, to obtain an award of compensatory monetary damages under § 1983, a plaintiff must demonstrate both that he has suffered an "actual" present injury and that there is a causal connection between that injury and the deprivation of a constitutionally protected right caused by a defendant. *See Carey,* 435 U.S. at 254–57, 98 S.Ct. 1042; *see also Babcock,* 102 F.3d at 272–73 (suggesting that while a plaintiff may recover monetary damages under the Eighth Amendment for "failure to prevent harm," the plaintiff is not entitled to monetary compensation for the mere "failure to prevent exposure to [a] risk of harm" (internal citation omitted)). Moreover, even assuming the availability of monetary damages to compensate a plaintiff for an increased risk of incurring a future serious injury caused by a defendant's deliberate indifference to that risk, such a plaintiff may not recover monetary compensation for a currently unmanifested injury under Illinois law [3] (or the law of this Circuit)

---

**3.** Although *Helling* made clear that prisoners may establish an Eighth Amendment claim based upon the unreasonable risk of future serious injury arising out of their exposure to second-hand smoke, the Court did not directly address the question of whether a prisoner may recover monetary damages based upon that risk of future injury. *See Fontroy v. Owens,* 23 F.3d 63, 66 (3d Cir.1994) ("[T]he Supreme Court [in *Helling*] did not have occasion to comment on the request for damages by a plaintiff who alleged only risk of future injury."). Instead, the Court focused primarily on the prisoner's ability to recover injunctive relief in the absence of an existing injury and concluded that "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition

in their prison on the ground that nothing yet had happened to them." *Helling,* 509 U.S. at 33, 113 S.Ct. 2475. Any injunctive relief sought in the present case is moot given that Henderson has already been transferred to a state prison facility, that the present Defendants are no longer his custodians and that, according to the parties, he does not face a likelihood of returning to the Cook County jail or being exposed to similar conditions. Moreover, nothing in the Court's reasoning in *Helling* evidences an intent to alter the well-established rules regarding causation and what a plaintiff must show in order to recover monetary damages for the risk of future injury.

Finding little guidance in *Helling,* the district court turned to state law principles to

unless the future serious injury is "reasonably certain to occur." *See Morrissy v. Eli Lilly & Co.*, 76 Ill.App.3d 753, 32 Ill. Dec. 30, 394 N.E.2d 1369, 1376 (1979) ("In Illinois, possible future damages in a personal injury action are not compensable unless reasonably certain to occur."); *see also Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir.1992) (indicating that future damages must be proved to a degree of reasonable certainty). Damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to recover monetary compensation. *See Wehmeier v. UNR Indus., Inc.*, 213 Ill.App.3d 6, 157 Ill.Dec. 251, 572 N.E.2d 320, 339 (1991); *see also Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 930 (7th Cir.1985).

Applying Illinois law, the district court reasoned that Henderson could not seek to recover monetary damages for the risk of future injury unless he could show that the injury is reasonably certain to occur. The court construed "reasonably certain" to require Henderson to show that there is a greater than fifty percent probability that he will contract cancer or some other serious ailment as a result of his prolonged exposure to second-hand smoke at the Cook County jail. In other words, Henderson had to prove that his exposure to second-hand smoke will more probably than not lead to some serious medical malady in the future. In addition, the court construed Illinois law to require that Henderson show to a reasonable degree of medical certainty that he himself, rather than some general statistical cohort, faced this increased risk of harm in order to recover monetary damages from the Defendants.

Henderson's scientific evidence that exposure to second-hand smoke causes serious adverse health consequences consisted primarily of expert testimony from Dr. Lloyd Klein, a professor of medicine at Rush University Medical College. Dr. Klein testified that excessive exposure to second-hand smoke leads to a twenty percent increase in the risk of coronary artery disease, in particular, atherosclerosis. Because Henderson could only produce expert testimony that exposure to excessive levels of second-hand smoke leads to this twenty percent increased risk of future injury and because Henderson's expert

determine whether Henderson carried his burden of showing an entitlement to an award of such damages. Implicit in the district court's decision to turn to Illinois law is its conclusion that the text of § 1983 neither addresses the issue of damages nor sets down the applicable rules of decision and that Illinois law on the issue of future damages is not inconsistent with federal law. *See generally Fontroy v. Owens*, 150 F.3d 239, 242–44 (3d Cir.1998) (concluding that the district court did not err in applying Pennsylvania law regarding the availability of damages in a § 1983 claim); *cf. Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) ("[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts."). In the absence of an express statutory mandate, a court is directed to determine the applicable rules of decision by reference to the three-step process provided in 42 U.S.C. § 1988, which the Supreme Court has described as follows:

First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (quoting 42 U.S.C. § 1988(a)).

Although it is not clear from the record whether the district court engaged in this process, Henderson does not contend on appeal that the district court erred in applying Illinois law in contravention of § 1988. Accordingly, any argument that Henderson may have had that federal law should apply (to the extent that it might lead to a different result) is therefore waived.

could not testify to a reasonable degree of medical certainty that Henderson himself faced that twenty percent increased risk as a result of his exposure to second-hand smoke, the district court concluded that there was no genuine issue of material fact that would allow Henderson to convince a jury that he faces some defined risk of developing a serious future injury or condition that is attributable to his exposure to second-hand smoke at the Cook County jail.

On appeal, Henderson argues that the district court erroneously held that there was no genuine issue of material fact as to his future injury. Henderson submits that his proffer of evidence showing that exposure to second-hand smoke results in a twenty percent increased risk of incurring a future serious injury creates a disputed fact that is sufficient to withstand the Defendants' motion for summary judgment. By requiring a showing that he had a greater than fifty percent chance of incurring a serious injury as a result of his exposure to second-hand smoke during his stay at the Cook County jail, Henderson argues that the district court applied a higher standard than required under Illinois law for an enhanced risk of future injury claim. Relying primarily on *Anderson v. Golden*, 279 Ill.App.3d 398, 216 Ill.Dec. 209, 664 N.E.2d 1137 (1996), Henderson contends that a plaintiff may pursue a claim that a defendant's wrongful conduct caused the plaintiff to bear an increased risk of injury, even if that risk of incurring a particular injury does not exceed fifty percent, so long as the plaintiff can show, to a degree of reasonable certainty, that the increased risk is caused by the defendant's wrongdoing.

It is not clear to us that Illinois law would require a plaintiff like Henderson to show that his exposure to second-hand smoke caused him a greater than fifty percent probability of developing a future serious injury in order to recover monetary damages from the Defendants. On one hand, the Illinois Supreme Court has

clearly indicated that an award of damages for the increased risk of future injury is improper absent the presentation of reasonably certain proof that such injury would occur. *See Amann v. Chicago Consol. Traction Co.*, 243 Ill. 263, 90 N.E. 673, 674 (1909); *see also Morrissy*, 32 Ill.Dec. 30, 394 N.E.2d at 1375–76. As the Illinois Supreme Court stated in *Amann*:

> A mere possibility, or even a reasonable possibility, that future pain or suffering may be caused by an injury, or that some disability may result therefrom, is not sufficient to warrant an assessment of damages. It would be plainly unjust to require a defendant to pay damages for results that may or may not ensue, and that are merely problematical. To justify a recovery for future damages the law requires proof of a reasonable certainty that they will be endured in the future.

90 N.E. at 674. Although the Illinois courts have yet to squarely define the meaning of "reasonable certainty," other jurisdictions have construed it to require a showing that it was more likely than not (*i.e.*, greater than fifty percent probability) that the plaintiff would develop the serious injury in the future, *see, e.g., Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315, 319–20 (5th Cir.1986); *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1137–38 (5th Cir.1985); *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1205 (6th Cir.1988), and at least one Illinois court has cited certain of these opinions with approval, *see Wehmeier*, 157 Ill.Dec. 251, 572 N.E.2d at 338–39.

In *Wehmeier*, the plaintiff introduced expert testimony that his exposure to asbestos resulted in an increased risk of contracting cancer. *See id.* at 326–28, 338–39. The defendant argued that the evidence was speculative and therefore erroneously admitted into evidence. *Id.* at 338. After noting that an increased risk of contracting cancer is not compensable under Illinois law unless it is reasonably certain to occur, the court turned to Fifth

Circuit's decision in *Gideon* for guidance on the meaning of "reasonably certain." *Id.* at 338–39. In *Gideon*, the Fifth Circuit determined that the lower court properly admitted into evidence medical testimony regarding a plaintiff's increased risk of developing cancer in the future because the plaintiff's medical expert established that the plaintiff had a greater than fifty percent chance of contracting cancer. 761 F.2d at 1137–38. The *Wehmeier* court contrasted *Gideon* with *Adams v. Johns–Manville Sales Corp.*, 727 F.2d 533 (5th Cir.1984), in which the Fifth Circuit affirmed a lower court's ruling that similar expert testimony was properly excluded because the plaintiff in that case presented no evidence regarding the likelihood of developing cancer in the future. *Id.* at 536–38. Relying on these two cases, the *Wehmeier* court determined that the trial court erred by admitting the plaintiff's evidence regarding the increased risk of contracting cancer because the plaintiff "did not establish that it *was a reasonable medical probability*" that he would contract cancer in the future. 157 Ill.Dec. 251, 572 N.E.2d at 339. Although the *Wehmeier* court does not indicate whether the plaintiff quantified his increased risk of developing cancer in terms of a percentage, it stands to reason from the court's reliance on *Gideon* that it equated "reasonable certainty" with a showing that the plaintiff had a greater than fifty percent probability of contracting cancer.

As Henderson points out, however, a recent decision from the Illinois Appellate Court suggests that the standard in Illinois might not be as high as *Wehmeier* suggests and the district court believed. In *Anderson v. Golden*, 279 Ill.App.3d 398, 216 Ill.Dec. 209, 664 N.E.2d 1137 (1996), the plaintiff brought suit against the defendant under a medical malpractice theory. *Id.* at 1138. The plaintiff alleged that the defendant was negligent in failing to have a growth that defendant surgically removed from the plaintiff's shoulder tested by a pathologist to determine whether the growth evidenced any sort of abornomali-

ty. *Id.* The growth recurred two years later and was diagnosed as a cancerous condition that required the plaintiff to undergo further surgery. *Id.* The plaintiff argued that the defendant's error in failing to have the first growth tested necessitated the surgery to remove the second growth and also led to an increased risk of future injury for which the plaintiff sought to recover damages. *Id.* With respect to that increased risk, a medical expert was prepared to testify on the plaintiff's behalf that the defendant's negligence, and the resulting delay in receiving proper treatment, increased the risk that the plaintiff would suffer a recurrence of the cancer by twenty-five to thirty-five percent and increased the risk that plaintiff's cancerous condition would metastasize by fifteen percent. *Id.*

The defendant in *Anderson* requested that the court bar the plaintiff from introducing the testimony regarding the increased risk of future injury on the basis that the plaintiff had not shown that the future injury was "reasonably certain to occur." *Id.* at 1138–39. The court held that the plaintiff could seek to recover monetary compensation for her increased risk of future serious injury—even if that risk is less than fifty percent—as long as the plaintiff can show to a reasonable degree of certainty that the defendant's wrongdoing proximately caused the increased risk. *Id.* at 1139.

■ However, even though Henderson may be correct in asserting that he need not prove that the likelihood of a future serious injury occurring is greater than fifty percent in order to recover monetary damages from the Defendants, he must still prove to a degree of reasonable medical certainty that *he himself* faces this increased risk—whether it be twenty percent, fifty-one percent, or ninety-nine percent—*and* that the risk was proximately caused by the Defendants' wrongful conduct. *See id.; see also Holton v. Memorial Hosp.*, 176 Ill.2d 95, 223 Ill.Dec. 429, 679

N.E.2d 1202, 1213 (1997) (reasoning that damages for an increased risk of harm may not be awarded unless a plaintiff can show that the defendant's wrongful conduct, "to a reasonable degree of medical certainty, proximately caused the increased risk of harm"). To avoid having damages awarded on the basis of mere speculation or conjecture, it only makes sense that the medical expert should be able to testify to a reasonable degree of medical certainty that the particular plaintiff himself faces the increased risk of harm whatever that level of risk. *See Dabros by Dabros v. Wang*, 243 Ill.App.3d 259, 183 Ill.Dec. 465, 611 N.E.2d 1113, 1117 (1993) ("While it is clear that an expert witness may not guess or state an opinion which is based merely on speculation or conjecture, the testimony of a medical expert need not be based on absolute certainty, but only a reasonable degree of medical and scientific definiteness." (internal citations and quotations omitted)). Moreover, under Illinois law, "[p]roximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury" or the increased risk of future injury. *Schultz v. Hennessy Indus., Inc.*, 222 Ill.App.3d 532, 165 Ill.Dec. 56, 584 N.E.2d 235, 241 (1991); *see also Wintz By and Through Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir.1997) ("Under Illinois law, to serve as the sole basis for a conclusion that an act was the proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed.").

Therefore, to withstand summary judgment in the present case, Henderson had to proffer competent and reliable expert medical testimony that there was a reasonable medical certainty that he himself faces some defined level of increased risk of developing a serious medical condition and that this increased risk was proximately caused by his exposure to second-hand smoke while detained at the Cook County jail. Henderson's proffer failed to meet this burden. The only evidence in the record that Henderson points to as support for his claim that exposure to second-hand smoke caused him to suffer an increased risk of incurring a serious future injury is Dr. Klein's testimony by affidavit that exposure to excessive levels of second-hand smoke leads to a twenty percent increase in the risk of atherosclerosis—a medical condition in which the walls of the arteries are thickened by the deposit of plaques. Dr. Klein attested that this progressive narrowing of the blood passages leads in many cases to strokes, heart attacks, or other adverse consequences. Having pointed to no other relevant evidence in the record to support his opposition to the Defendants' motion for summary judgment, Henderson's challenge on appeal rests on the weight of Dr. Klein's testimony alone.

While Dr. Klein did testify that gross exposure to excessive levels of second-hand smoke leads to a twenty percent increase in the risk of developing atherosclerosis as a general proposition, he also conceded that he "cannot say to a reasonable degree of medical certainty whether a particular person exposed to ETS who is not exhibiting adverse health consequences will develop a smoking-related disease. There are too many variables." Dr. Klein's opinion mirrored the testimony of the Defendants' expert, Dr. Brian Samuels, Director of Clinical Research at Lutheran General Hospital's Hematology and Oncology Department, who attested that "it cannot be determined within a reasonable degree of medical certainty that a person ... will contract any specific physical ailment as a result of the ETS exposure." Moreover, as the district court noted, testimony from both experts suggested that even if a particular individual such as Henderson was to develop a disease or disorder some time in the future of a kind statistically associated with persons exposed to second-hand smoke, it would be virtually impossible to determine whether second-hand smoke exposure or some genetic, environmental, or other factor was

the cause of the disorder in that particular individual.

Notwithstanding Dr. Klein's concession, Henderson argues on appeal that Dr. Klein's testimony was indistinguishable from the testimony accepted by the court in *Anderson*, and, therefore, the district court should have found that Dr. Klein's testimony was sufficient to raise a genuine issue of material fact. Henderson misconstrues the nature of proof offered by the plaintiff in *Anderson* in support of her future injury claim. A careful examination of *Anderson* clearly shows that the proffered expert in that case was prepared to testify to a reasonable degree of medical certainty that the plaintiff faced a defined risk of future injury as a result of the defendant's actions in that case. Indeed, the court in *Anderson* was specifically asked to review the following certified question:

> Assuming that a plaintiff in a medical negligence action has established that the negligence of the defendant has to a reasonable degree of certainty caused injury to the plaintiff, *may the plaintiff present evidence to a reasonable degree of certainty that the plaintiff is at an increased risk of future harm as a result of the injury she has sustained, even if the increased risk of future harm is less than fifty percent (50%) likely to occur?*

664 N.E.2d at 1139 (emphasis added). The plaintiff's medical expert in *Anderson* was set to testify that the plaintiff *herself* faced a twenty-five to thirty-five percent increased risk of the cancer recurring and a fifteen percent increased chance of metastasis as a result of the defendant's negligence. *See id.* at 1138. In contrast, Dr. Klein conceded that he was unable to testify to a reasonable degree of medical certainty that Henderson faced a twenty percent increased risk of developing atherosclerosis or any other serious medical condition as a result of his exposure to second-hand smoke while in jail. For this reason, we agree with the district court that the link between Henderson's expo-sure to second-hand smoke, and the claimed increased risk of developing atherosclerosis or some other serious injury is too attenuated and speculative to properly support an award of present monetary damages.

In sum, Dr. Klein's inability to testify that Henderson faces this twenty percent increased risk of developing a serious injury in the future is fatal to his claim that the district court erred in granting summary judgment in favor of the Defendants. *See Buckner v. Sam's Club, Inc.*, 75 F.3d 290 (7th Cir.1996) (concluding that summary judgment is appropriate where, despite an expert's opinion to the contrary, the undisputed facts would not allow a reasonable jury to infer proximate cause).

## II. CONCLUSION

For the foregoing reasons, the decisions of the district court granting the Defendants' motion to dismiss Henderson's present injury claim and the Defendants' motion for summary judgment on Henderson's future injury claim are AFFIRMED.

FAIRCHILD, Circuit Judge, dissenting in part.

The court's holding in Part 1A is premised on the proposition that although Henderson was a pretrial detainee claiming that he was subjected to punishment without due process, his claim must contain the same elements as if he were a convicted prisoner claiming cruel and unusual punishment in violation of the Eighth Amendment. He "must establish the same objective and subjective components required under an Eighth Amendment claim for cruel and unusual punishment," *supra*, page 844, n. 2.

This decides, without discussion, a question which this court has said is "unsettled." *Mathis v. Fairman*, 120 F.3d 88, 91, n. 3 (7th Cir.1997).

As pointed out in *Estate of Cole v. Fromm*, 94 F.3d 254, 259, n. 1 (7th Cir.

1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)), "[a] pretrial detainee's constitutional rights are distinct from a prisoner's rights because the State cannot punish a pretrial detainee." One critical element of a detainee's claim is "punishment." The corresponding element of an Eighth Amendment claim is "cruel and unusual punishment." We have said that the pretrial detainee's rights are "at least as great" as the Eighth Amendment protections. *Id. See also County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998). But we have not previously held that those rights are not greater, and that in order to state a claim under the Fourteenth Amendment a detainee must claim that the defendants impose deprivation or pain serious enough to constitute cruel or unusual punishment.

Logically, the pretrial detainee need only show that defendants knowingly imposed deprivation or pain amounting to "punishment" and need not establish that the "punishment" was cruel and unusual.

It is true that decisions of this court requiring that a detainee must prove that defendants were deliberately indifferent to harm imposed on plaintiff have referred to the harm as "serious." The source of this phrasing was *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), where the Supreme Court in an Eighth Amendment context required showing that defendant must have been aware of a "substantial risk of serious harm."

These Seventh Circuit cases are *Estate of Cole, supra, Mathis, supra, Payne for Hicks v. Churchich*, 161 F.3d 1030 (7th Cir.1998) and *Higgins v. Correctional Medical Services of Ill.*, 178 F.3d 508, 511 (7th Cir.1999). In the first three of these the claim was that officers had failed to prevent the detainees' suicide, and in *Higgins* that they failed to treat a dislocated shoulder. In none was the seriousness of the harm an issue. In all the court decided that plaintiff had failed to prove the subjective deliberate indifference element. The first three cases point out the distinct nature of the Fourteenth Amendment claim and state that the rights of the detainee were "at least as great" as those of the prisoner under the Eighth Amendment. *See also County of Sacramento, supra.* The use of the word "serious" in these circumstances cannot amount to an implied holding that a detainee must claim harm as serious in degree as required for the objective element of an Eighth Amendment claim.

Henderson's *pro se* complaint asserted that, notwithstanding his complaints and grievances, defendants continued to subject him to excessive levels of second-hand smoke causing him pain. Accepting these claims as a court must on a motion to dismiss, they are sufficient for a Fourteenth Amendment claim by a detainee.